(53 App. Div. 65.)

### UNION NAT. BANK OF TROY v. SCOTT.

(Supreme Court, Appellate Division, Third Department. June 28, 1900.)

1. CORPORATIONS—CORPORATE NOTE.

A promissory note made to the order of "ourselves," signed, "H. V. K. Co., A. B., Treasurer," and indorsed by "H. V. K. Co., A. B., Treasurer, Troy, N. Y.," and "C. D., Troy, New York," is on its face a corporate liability, and not that of A. B. and C. D.

2. SAME—ANNUAL REPORT—FAILURE TO FILE—STOCKHOLDERS—STOCK BOOK.

Stock Corp. Law (Laws 1892, c. 688) § 29, requires the keeping a book containing a list of the stockholders, the amount of stock held by each, and the time when they became owners, which book shall be presumptive evidence of the facts in any action against the corporation, its officers, directors, or stockholders. Defendant in an action for failure to file an annual report was a director of a corporation which did not keep such book. *Held*, that defendant might be proved to be a stockholder by other evidence.

3. SAME—PLACE OF STOCKHOLDERS' MEETING.

Stock Corp. Law (Laws 1892, c. 688) § 20, provides that the directors of every stock corporation shall be chosen at the place fixed by the corporate by-laws. Defendant was chosen director of a corporation at a stockholders' meeting held at Troy; the principal office of the company being established at Waterford, under the certificate of incorporation. The by-laws were not in evidence, nor did it appear that any place for the meeting was fixed by them. The company had an office in Troy, and stockholders' meetings were all held there for 12 years. *Held*, that defendant's election as director was not invalid.

4. SAME—INSPECTOR'S OATH—FAILURE TO FILE.

Under Stock Corp. Law (Laws 1892, c. 688) § 28, requiring the oath of inspectors of election at a stockholders' meeting to be filed in the office of the clerk of the county where the meeting is held, a failure to file such oath will not invalidate the election.

5. SAME—LIABILITY OF DE FACTO DIRECTOR.

Where defendant was present at a stockholders' meeting at which he was elected director, and subsequently acted as such, he cannot escape liability to corporate creditors for failure to file an annual report on the ground of the invalidity of his election.

6. SAME—RESIGNATION—WHAT AMOUNTS TO.

Defendant was a director of a corporation whose goods his firm had been selling. Defendant stated to the treasurer and the secretary of the corporation that, if dissatisfied with the way defendant's firm handled the account, they might take it away, in which case defendant "would not have anything more to do with the management, when he wasn't selling the goods." Subsequently defendant signed an annual report, and later made an individual report, stating that he was president and director of the company. *Held*, that his language did not amount to a resignation of his office as director.

Appeal from trial term, Saratoga county.

Action by the Union National Bank of Troy against Edward W. Scott. From a judgment for plaintiff after trial by the court, defendant appeals. Affirmed on opinion of court below.

The following is the opinion of the court below (EDWARDS, J.):

This action is brought against the defendant, as a director of the Hudson Valley Knitting Company, upon the statutory liability for failure to make and file an annual report. The Hudson Valley Knitting Company was incorporated in November, 1877, under chapter 40, Laws 1848, and the acts amendatory thereof. The defendant was one of the signers of the certificate of incorporation, and one of the trustees named therein for the first year. The place

66 N.Y.S.—10

designated in the certificate in which the operations of the company were to be carried on is Waterford, in the county of Saratoga; and the annual meetings of stockholders for the election of trustees were held at that place until and including the meeting held in February, 1883, and thereafter were held in the city of Troy, in pursuance of a resolution adopted at each previous meeting, except that the minutes do not show any such resolution passed at the meeting held in February, 1892. From 1883 to 1894, except the year 1889, meetings of the trustees were annually held for the election of officers; and such meetings, after 1883, except the one in the year 1888 held in Waterford, were held in the city of Troy. The last meeting of the stockholders was held on February 6, 1894, and the last meeting of the trustees was held on the same day. The defendant attended each of said stockholders' meetings, and at each was elected a trustee, and also attended each of said meetings of trustees for election of officers, and at each was elected president. The particular place of business of the company was in Waterford, where it had an office; and it also had an office in the city of Troy. The company did not file an annual report in 1895 or in 1896. On May 1, 1896, an action was commenced by the people of the state against the company for a dissolution of the corporation on the ground that it had been insolvent for more than a year. On May 4th an order was granted in said action enjoining creditors of the corporation from bringing or prosecuting any action against the company. On October 6, 1896, a judgment was granted dissolving the corporation, and restraining it from exercising any of its corporate powers and franchises, and enjoining all persons from commencing any action or proceeding against the corporation, which judgment was entered in the Saratoga county clerk's office on the 13th day of October, 1896. In December, 1894, the defendant, who was a member of the firm of Scott Bros., commission merchants, in New York, had a conversation with Mr. Dowsley, the secretary, and with Mr. Fales, the treasurer, of the corporation, and the trustees who had principally the management of the business, in respect to the sale by the defendant's firm of the goods of the company on commission, in which conversation the defendant told Messrs. Dowsley and Fales that if they were not satisfied with the manner in which defendant's firm was selling the goods, and the commission charged, they could remove the account to a broker, and in that case the defendant would not have anything more to do with the management of the mill, when he was not selling the goods. Messrs. Dowsley and Fales came to the conclusion that it was better to sell the goods of the mill in some other way than through the defendant's firm, and the arrangement theretofore existing between the mill and defendant's firm then terminated. Thereafter the defendant did not confer with his associates in the business as to the management of the company, nor as to the purchase of goods for the mill, or of machinery, and did not attend any meeting of the board; and no members of the board, except Dowsley and Fales, thereafter had anything to do with the management of the company. In the early part of the year 1895 the defendant signed an annual report of the company, and sent it to Troy or to Waterford, to some of the officers of the company, to be filed, but the same was not filed. On May 18, 1896, the defendant made a certificate and individual report as a director of the corporation, which was verified on that day, and filed on the 19th of May, 1896, in the office of the secretary of state. This certificate of the defendant stated that he was president of and a director of the Hudson Valley Knitting Company; that he had endeavored to have the annual report of the company made and filed as required by law; that such report was prepared and signed and acknowledged by him pursuant to law, and sent by him to the secretary to be filed, but that the secretary had neglected and refused to file such report. The verification made by the defendant stated that he was the president and director of the Hudson Valley Knitting Company. No certificate and individual report was filed by the defendant in the year 1895. On October 10, 1895, the company made its promissory note, of which the following is a copy:

"$5,000.                              Troy, N. Y., October 10th, 1895.

"Four months after date, we promise to pay to the order of ourselves five thousand dollars, at the National Bank of Troy, for value received.

                                    "Hudson Valley Knitting Co.,
                                         "F. A. Fales, Treas."

This note was indorsed as follows: "Hudson Valley Knitting Co., F. A. Fales, Treas., Troy, N. Y.  K. B. Dowsley, Troy, N. Y.  F. A. Fales, Troy, N. Y.,"—and, so indorsed, was delivered to the plaintiff, who on the day of its date discounted the same for the Hudson Valley Knitting Company, and the proceeds thereof were paid over to the said company, and by it deposited to its credit in the National Bank of Troy, where the said company kept its account.  At the time of the making of this note, F. A. Fales was, and during the existence of the corporation continued to be, the treasurer of the Hudson Valley Knitting Company, and had charge of its financial and banking matters. This note was renewed from time to time by notes of the said company similarly made and indorsed, the last of which, dated April 3, 1896, for $4,900 ($100 having been paid on the principal), reads as follows:

"$4,900.                                Troy, N. Y., April 3rd, 1896.

"One month after date, we promise to pay to the order of ourselves forty-nine hundred dollars, at the National Bank of Troy, for value received.

                              "Hudson Valley Knitting Co.,
                                        "F. A. Fales, Treas."

This note was indorsed: "Hudson Valley Knitting Co., F. A. Fales, Treas. F. A. Fales, K. B. Dowsley,"—and was on its date delivered to the plaintiff, who is now the owner of the same; and no part thereof has been paid, except $572.71 paid by the receiver of the Hudson Valley Knitting Company on July 29, 1898.  To recover the amount due on this last note given in renewal of the indebtedness of the Hudson Valley Knitting Company to the plaintiff, contracted on October 10, 1895, during which year no report was filed, this action has been brought.  The alleged liability of the defendant arises by virtue of the provisions of section 30 of the stock corporation law (Laws 1892, c. 688), which require a stock corporation to make and file in the office of the secretary of state, and in the office of the county clerk of the county where its principal business office may be located, an annual report, and provides that, "if such report is not so made and filed, all the directors of the corporation shall jointly and severally be personally liable for all the debts of the corporation then existing, and for all contracted before such report shall be made."  It is well settled that this statute is a highly penal one, and that, to establish a liability created by it, every fact upon which the right to recover against a director depends must be affirmatively proven.  Whitney v. Cammann, 137 N. Y. 344, 33 N. E. 305.  It is in the light of this principle that the questions presented in this case should be considered and determined.  The right to maintain the action depends upon the existence of three facts:  The failure to make and file a report, a debt against the corporation, and the directorship of the defendant at the time of the default.  Shaler v. Bliss, 27 N. Y. 297; Duckworth v. Roach, 81 N. Y. 49;  Gold v. Clyne, 134 N. Y. 262, 31 N. E. 980.  The failure to file reports in 1895 and 1896 is conceded.  The indebtedness and directorship are controverted.  This brings us to the consideration of the question whether a valid indebtedness then existed against the corporation in favor of the plaintiff.  If a debt exists against the corporation, to which it has no good defense at law or in equity, the statutory liability of the defendant attaches.  Arms Co. v. Barlow, 63 N. Y. 62.  The alleged indebtedness arose out of the discounting by the plaintiff for the corporation of the note dated October 10, 1895, for $5,000, which was renewed from time to time, and in renewal of which, except $100 paid on the principal, the note of April 3, 1896, for $4,900, was given.  It is maintained by the defendant that these notes were, upon their face, not the notes of the Hudson Valley Knitting Company, but the individual notes of Fales and of Dowsley; but I think it is well settled by the authorities that they are the notes of the corporation.  They are signed in the name of the corporation, by F. A. Fales, the treasurer, who had authority to make them.  Furthermore, the original note was given to the plaintiff in consideration of the proceeds of the same received by the defendant, which were placed to its credit in its account with the National Bank of Troy.  It is too clear for discussion that this transaction of the 10th of October, 1895, constituted an indebtedness of the Hudson Valley Knitting Company to the plaintiff, and in an action brought by the plaintiff against that company on the renewal note of April 3, 1896, the company would have no defense whatever.  The indebt-

edness existed when the corporation was in default for not filing its report for 1895.

The defendant further maintains that the proof fails to show that he was a director of the Hudson Valley Knitting Company at the time of the failure to file the annual report. One of the grounds for this contention is that it was essential to his election as a director in February, 1894, that he was then a stockholder, and that the only evidence of who are stockholders of a corporation is the stock book provided for by section 29 of the stock-corporation law, which book was not produced in evidence. That section requires that every stock corporation shall keep a book, to be known as the "Stock Book," "containing the names, alphabetically arranged, of all persons who are stockholders of the corporation, showing their places of residence, the number of shares of stock held by them respectively, the time when they respectively became the owners thereof and the amount paid thereon." It further provides that such book "shall be presumptive evidence of the facts therein so stated in favor of the plaintiff in any action or proceeding against such corporation, or any of its officers, directors or stockholders." While this statute makes the stock book "presumptive evidence" of who are stockholders in an action against any of its directors, it does not make it the only evidence. The Hudson Valley Knitting Company did not keep the stock book required by this statute, and the neglect to keep such a book cannot exclude common-law evidence of who are stockholders. In this case it was clearly proved by competent common-law evidence that the defendant was a stockholder.

It is also contended by the defendant that his election as a director in February, 1894, was void, for the reason that the meeting of the stockholders for the election of trustees was held in Troy, and not at Waterford, and for the further reason that the inspectors of election did not file their oath of office in Rensselaer county. Section 20 of the stock corporation law provides that "the directors of every stock corporation shall be chosen from the stockholders at the time and place fixed by the by-laws of the corporation." There is no other statute prescribing the place of meeting of stockholders. The by-laws are not in evidence, and it does not appear that Troy is not the place fixed by the by-laws. It does appear that the company had an office in Troy, and that all of the meetings of the stockholders for the election of directors after 1883 were held there. The statute requiring the oath of inspectors to be filed in the office of the clerk of the county in which the election is held (section 28, Stock Corp. Law) is directory only, and the failure to file it does not invalidate the election. In re Directors of Mohawk & H. R. R. Co., 19 Wend. 135. Furthermore, the defendant cannot avail himself of irregularities in his election as a director at the stockholders' meeting in February, 1894, for the reason that he was at least a de facto director. He was present at the stockholders' meeting in February, 1894, and also at the meeting of the trustees held thereafter on the same day for election of officers, accepted the office, and thereafter exercised the duties of a director. Having accepted the office and exercised its duties, he cannot escape its responsibilities. He was a director to whom the liability created by the statute attaches. Donnelly v. Pancoast, 15 App. Div. 323, 44 N. Y. Supp. 104. "The rule of law is well established that he who enters upon an office and exercises all its functions is responsible for his acts therein, to the same extent as though he of right occupied the position." Id.

It is strenuously urged by the defendant that if he were legally elected a director in February, 1894, his declaration made to Messrs. Dowsley and Fales in the following December, and his nonparticipation with them thereafter in the active management of the business of the company, amounted to a resignation, so that on October 10, 1895, when the indebtedness of the corporation to the plaintiff was contracted, the defendant had ceased to be a director of the company. I do not think his language susceptible of such a construction. He testifies that he said to them, "I should not have anything more to do with the management of the mill, when I wasn't selling the goods." Whether this language has reference to his directorship, or to his assisting the manager as he had theretofore done, is not certain; but, if it refers to the former, it cannot be construed, especially in the light of his subsequent acts and conduct, as anything more than a threat to resign in case the goods of the concern should

no longer be sold by defendant's firm on commission. The most reasonable interpretation is that he would not have anything to do with the active management of the mill. But, if it may be regarded as referring to the resigning of his office, it cannot be considered as indicating more than a purpose to do so in the future. That it was not regarded by the defendant himself as a resignation is evidenced by the facts that in the early part of 1895 defendant signed an annual report of the company, and again, on May 18, 1896, he made a certificate and individual report, signed by him as a director and verified by him, in which he stated that he was president of and a director of the Hudson Valley Knitting Company, and that an annual report had been prepared and signed and acknowledged by him pursuant to law, and sent by him to the secretary to be filed, but that the secretary had neglected to file the same. The language of the defendant in December, 1894, cannot be construed as a resignation of the office of director, and his subsequent acts and declarations are entirely inconsistent with his present contention. It is true that he did not after December, 1894, attend any meeting of the trustees, but it is also true that no meeting of the trustees was thereafter held. In respect to the provisions of chapter 354 of the Laws of 1899, passed April 18, 1899, I deem it sufficient to say that in my opinion they have no application to this case.

I fully appreciate the fact that the penalty imposed by the statute upon a director for the omission to file an annual report is severe, and it may well be doubted whether in this case the plaintiff has sustained any damages whatever in consequence of such omission; but I am of the opinion that upon the facts of this case the statutory liability has arisen, and that the plaintiff is entitled to judgment against the defendant in the sum of $4,900, with interest from May 4, 1896, less the sum of $572.71, besides costs. A decision in accordance with the facts herein stated may be prepared by the plaintiff's attorney, and submitted to me for settlement at my chambers on five days' notice to the attorneys for the defendant.

Argued before PARKER, P. J., and MERWIN, SMITH, and KELLOGG, JJ.

Harrison & Byrd, for appellant.

Wheeler & McKean, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion delivered by the trial judge.

---

(32 Misc. Rep. 63.)

PEOPLE ex rel. KEYSER v. BOARD OF EDUCATION et al.

(Supreme Court, Special Term, New York County. June, 1900.)

1. SCHOOLS—REMOVAL OF TEACHERS—NECESSITY OF WITNESSES.
    Under Laws 1896, c. 387, § 26, providing that the board of school superintendents may, by vote of the majority of the whole number in office, remove any teacher other than principals and vice principals, provided the removal of any teacher be approved in writing by a majority of the inspectors of the district, it is not a fatal error to the removal of a teacher by the board of superintendents that its committee to which the charges were referred omitted, on the hearing, to swear its witnesses, since no trial at all was necessary before it.

2. SAME—PROCEEDINGS FOR REMOVAL.
    Charges which were preferred against a teacher before the board of school superintendents, finally came before the board of education, and its committee on instruction heard the evidence, and reported in favor of dismissal, and the board adopted the resolution of dismissal. The record of proceedings of the school board showed that the president put the question whether the board would adopt the resolution attached to the report of the committee, and it was adopted. The report of the committee set forth the charges against such teacher, and stated that, after hearing