In re the BOHACK CORPORATION, Debtor.

The BOHACK CORPORATION, Plaintiff,

v.

LUIGI GOLDSTEIN, INC., Robert Duchonov, Barry Goldstein, Bernard Drang, Defendants.

Bankruptcy No. 74B933.

United States Bankruptcy Court, E. D. New York.

Jan. 24, 1980.

Shaw & Levine, Garden City, N. Y., for plaintiff.

Marcus & Katz, Mineola, N. Y., for defendants.

C. ALBERT PARENTE, Bankruptcy Judge.

The captioned controversy focuses upon a contractual dispute arising in the bankruptcy context. The Bohack Corporation, debtor in possession (hereafter, plaintiff) seeks judgment determinative of Luigi Goldstein, Inc., Robert Duchonov, Barry Goldstein and Bernard Drang's liability to the plaintiff pursuant to terms of a lease executed by the parties on April 1, 1977.

On May 25, 1976, the Bohack Corporation and Luigi Goldstein, Inc., by its Vice-president Robert Duchonov, executed a lease (hereafter, 1976 lease), approved by an Order of this Court, for the second floor of Building W at the Bohack Terminal for a period of four months commencing on that date and terminating September 25, 1976, at a monthly rental of $10,000. Simultaneously, Mr. Duchonov signed a personal guaranty for the full performance of the 1976 lease. The guaranty stated in part as follows:

> [That it] shall remain and continue in full force and effect as to any renewal, modification or extension of this lease and during any period when Tenant is occupying the premises as a 'statutory tenant'.

Following the 1976 lease expiration and in accord with an oral agreement between the parties, the defendant continued in possession of the premises. Testimony adduced at trial established that during the hiatus time frame a demand for payment of rent was never made by the plaintiff, however, it was uncontroverted that the cost of fuel, maintenance and refrigeration was to be borne by Luigi Goldstein, Inc. as occupant of the premises.

On April 1, 1977 the parties executed a second lease (hereafter, 1977 lease), approved by this Court, for a portion of the second floor of Building W for a term of five years. The rent for said premises was fixed at $4,816.67 per month and $5,382 per month for use of the remainder of the second floor during the months of June, July and August of 1977.

At the same time, defendants, Goldstein, Drang and Duchonov, signed a personal guaranty for the sum of $9,276.83 representing outstanding fuel charges and refrigeration costs incurred from September 25, 1976 up to and including March 31, 1977.

In October 1977 the Bohack Corporation instituted a suit against the defendant, Luigi Goldstein, Inc., in Civil Court of the City of New York, Kings County, for rent accruing under the 1977 lease in the amount of $54,000. Subsequently and pursuant to a stipulation of settlement approved by this Court, defendant paid plaintiff $12,128.69. However, the balance remaining according to the terms of that settlement, viz., $20,000, was never received by the plaintiff as a result of a "stop payment" order issued by Duchonov on August 1, 1978.

Thereupon plaintiff filed its complaint with this Court contending that Luigi Goldstein, Inc. was indebted to the Bohack Corporation in comport with the terms of the 1977 lease as follows:

| | |
|---|---:|
| RENT FOR PERIOD JUNE 1, 1978 TO NOVEMBER 30, 1978 | $28,900.02 |
| SUMMER RENT FOR PERIOD AUGUST 15, 1978 TO SEPTEMBER 14, 1978 | 5,382.00 |
| WATER CHARGES | 223.13 |
| ELECTRICITY CHARGES | 22,530.70 |
| OIL CHARGES | 2,822.54 |
| LICENSE FEES | 1,440.00 |
| MISCELLANEOUS CHARGES | 5,411.48 |
| REPAIRS TO REFRIGERATION EQUIPMENT | 9,617.40 |
| COST OF RUBBISH REMOVAL | 2,800.00 |
| TOTAL | $79,127.27 |

In ancillary context, the complaint alleged that defendant, Duchonov, was personally liable for monies owed to plaintiff under the 1977 lease. This contention is anchored to the concept that the 1977 lease constitutes a modification, extension or renewal of the 1976 lease. Consonant therewith, plaintiff asserts that the personal guaranty of Duchonov executed simultaneously with the 1976 lease transposes to the 1977 lease rendering him liable for a sum of $79,127.27. The complaint in a separately stated and numbered cause of action further seeks to hold Duchonov liable in the amount of $25,382 for ordering a "stop pay-

**558**

ment" on checks remitted to the plaintiff by the defendant corporation.

In addition the complaint contends that defendants, Duchonov, Drang, and Goldstein, are personally liable for fuel charges and refrigeration costs incurred during the period September 25, 1976 up to and including March 31, 1977 totaling $5,411.48 premised upon the guaranty executed by the defendants on May 25, 1977.

Defendants' responsive pleading denies that the 1977 lease was an extension, modification or renewal of the 1976 lease, adjunctively asserting defenses and setoffs following:

1. The plaintiff-landlord failed to perform its obligation to maintain and repair the roof of the leased premises and drains located thereon;

2. The defendant improved the premises to the extent of $7,000; and

3. The plaintiff-landlord supplied excessive heat to the premises for the "comfort and convenience of its employees only."

At trial the defendant alleged an additional setoff in the sum of $25,000 comprising security held by the plaintiff.

The complaint and answer raise the following issues:

1. Is the defendant corporation liable to the Bohack Corporation for rent and expenses accruing under the 1977 lease;

2. Is Duchonov personally liable to Bohack for monies due under the 1977 lease premised upon his personal guaranty of May 1976;

3. Is Duchonov liable to the plaintiff as a result of the orders to stop payment he issued for checks of the corporate defendant payable to Bohack;

4. Are defendants, Duchonov, Drang and Goldstein liable to the plaintiff for fuel and refrigeration costs as a result of their guaranties executed on May 25, 1977.

The corporate defendant concedes liability to the plaintiff under the 1977 lease, however, it maintains that judgment should

be reduced in *pari passu* with the aforesaid counterclaims.

■ Adverting to the first counterclaim, defendant alleges that plaintiff failed to repair the roof and drains. However, testimony by plaintiff's witness indicates that Bohack did make the necessary repairs whereas, defendant corporation failed to rebut this testimony.

■ The second counterclaim demands that plaintiff be required to reimburse the plaintiff for fuel charges resulting from excessive heat supplied by the landlord, it should be noted that the record is devoid of any rebuttal to the testimony of Bohack's chief of maintenance that temperatures were at the minimum level necessary to prevent pipes utilized by the fire sprinkler system from freezing.

■ Evidence submitted by the corporate defendant to establish its third counterclaim, viz., the cost of improvements to the leased premises graphically lacks merit. Paragraph 39 of the 1977 lease imposes upon the tenant the obligation to make all repairs and incur any necessary expenses in the operation of refrigeration equipment.

Plaintiff concedes that judgment should be reduced by the amount of security held for the 1977 lease. Controversy surrounding the amount of that security was erased by the concurrence of Franklin Knobel for the plaintiff and Robert Duchonov for the defendant that the deposit held by plaintiff on the 1977 lease was in fact the sum of $15,000.

Based upon the testimony and evidence adduced at trial, this Court correlates its dispositive findings and conclusions as follows:

The defendant, Luigi Goldstein, Inc. is adjudged liable to the Bohack Corporation in the sum of $79,127.27 less $15,000 security deposit held by the plaintiff. The defendant's affirmative defense and setoff is not supported by probative evidence and is therefore stricken.

Adverting to the personal liability of defendant, Duchonov, for rent and expenses

accruing under the 1977 lease, relative thereto it is incumbent upon the Court to ascertain whether the 1977 lease is a renewal, modification or extension of the 1976 lease.

■ The courts in determining the liability of a guarantor have consistently held that, guarantors are bound only to the express terms of their written agreement . . . *Citibank N. A. v. Galor Construction Co., Inc.*, 60 A.D.2d 667, 400 N.Y.S.2d 208 (3rd Dept.1977). See *Dunkirk Trust Company v. Schmitt*, 316 F.2d 537 (2d Cir. 1963), where the court stated:

> In construing the guaranty we are guided by the view of the New York courts that the obligations of a guarantor should be strictly construed, *Wesselman v. Engel Co.*, 309 N.Y. 27, 127 N.E.2d 736 (1955), and more particularly that 'unless the terms of the guaranty clearly import a continuing liability, it will be held limited to the transaction for which it was given.'

■ The Court in context with the precepts of law here appertaining concludes that the 1977 lease is not a renewal, modification or extension of the 1976 lease. The 1977 lease does not contain any language which can be construed as a renewal, modification or extension of the 1977 lease.

Plaintiff's contention that although the 1977 lease does not specifically state that it is a renewal of the original lease, nevertheless, it was the intention of the parties that it be deemed a renewal of the 1976 lease, as extended and modified, is manifestly self-serving and desiccate of probative weight.

■ It is axiomatic that a lease is to be interpreted in light of the intention of the parties, subject to the maxim that where the lease is unambiguous, parol evidence is not to be admitted. In support of this proposition, see *Raleigh Associates v. Henry*, 302 N.Y. 467, 99 N.E.2d 289, where the Court stated: "In short, since the lease agreement is unambiguous, parol evidence as to what might have been in the mind of one party or the other as to the amount of the renewal rent was neither necessary nor justified."

In light of the fact that the 1977 lease is unambiguous, resort to extrinsic evidence to vary the terms thereof is precluded. This Court finds that the language of the 1977 lease is unambiguous and cannot be modified orally. Plaintiff's assertion that the lease be construed as a renewal, modification or extension of the 1976 lease is rejected.

The hiatus term between the expiration of the 1976 lease, September 25, 1976 and the commencement of the 1977 lease, April 1, 1977, during which Luigi Goldstein, Inc. occupied the premises requires consideration. Assuming arguendo that a statutory tenancy was created by operation of § 232–c of the N.Y.Real Property Law (McKinney 1968) and furthermore that a privilege of renewal was contained in the 1976 lease, such tenancy could not be considered an extension of the earlier tenancy. *Toms Point Apartments v. Goudzward*, 72 Misc.2d 629, 339 N.Y.S.2d 281 (Nassau Co. 1972).

The Courts of the State of New York in definitive interpretation of § 232–c of the New York Real Property Law (McKinney 1968) have held that, "The options, privileges, duties, rights and obligations of the parties under a lease are only valid during the original term and do not obtain in a hold over tenancy." See *Kalinowski v. Interstate Motor Freight System*, 69 Misc.2d 414, 330 N.Y.S.2d 256 (Rensselear Co. 1972).

■ Insofar as reaching a disposition of Duchonov's personal liability for checks issued to Bohack Corporation, this Court looks to § 3–403(2)(b) of the Uniform Commercial Code (McKinney 1964) for a resolve of that issue. Substantively, said section provides that an authorized agent who signs his own name to an instrument is not personally liable on the instrument if the instrument names the person represented, or shows that the agent signed in a representative capacity, or the immediate parties know he is in fact signing in a representative capacity.

■ Applying § 3–403(2)(b) to the factual posture of this case the Court finds that:

There was no testimony at trial which questioned Robert Duchonov's authority as vice-president of Luigi Goldstein, Inc. to sign the two checks in question.

2. The two checks in question refer to the corporation which he represented.

3. The plaintiff dealt with Duchonov in his capacity as vice-president of the defendant corporation since 1976.

In light of the above, this Court concludes that defendant, Duchonov, cannot be held liable on the instruments.

Although Robert Duchonov is not personally liable on the two checks in question, defendant, Luigi Goldstein, Inc., is not absolved and is to be held liable on the instruments. One check represents final payment pursuant to a stipulation of settlement which was approved by an Order of this Court. While the second check represents rental for additional space leased during the Summer of 1978. This sum is included in the $79,127.27 judgment requested by the plaintiff to be assessed against Luigi Goldstein, Inc.

Relative to the personal liability of defendants, Bernard Drang, Robert Duchonov, and Barry Goldstein for charges accrued by the defendant while it occupied the rented premises as a statutory tenant or occupant, the following must be considered.

Testimony elicited from plaintiff's controller fixed the total for fuel charges and refrigeration costs due and owing Bohack under the 1977 lease at $5,411.48. Significantly, Duchonov did not contradict that amount nor did he deny the validity of the guaranty signed by himself and the other individual defendants.

Therefore, this Court finds that the guaranty, signed by Duchonov, Drang and Goldstein is valid and subsisting thereby imposing personal, joint and several liability upon them to the Bohack Corporation in the sum of $5,411.48.

In dispositive summary, the Court grants judgment to the plaintiff as follows:

1. Luigi Goldstein, Inc. is liable to Bohack Corporation in the amount of $79,127.27 less the amount of $15,000 representing a security deposit held by the plaintiff for rent and charges due under the lease signed on April 1, 1977 calculating to the sum of $64,127.27.

2. Duchonov is absolved of personal liability for the rent and charges due under the lease signed April 1, 1977 based on his personal guarantee executed on May 25, 1976.

3. Duchonov is not personally liable to the Bohack Corporation in the amount of $25,384.50 based on the stop payment orders he issued for corporate checks.

4. Duchonov, Drang and Goldstein are personally liable to the plaintiff in the amount of $5,411.48 based on the guarantee signed by them on May 25, 1977.

SETTLE JUDGMENT.