**Frederick M. GLASS, Plaintiff,**

v.

**Rory D. HARRIS and Frederick J. Rambeau, III, Defendants.**

**No. 88 Civ. 0391 (RWS).**

United States District Court, S.D. New York.

June 28, 1988.

Townley & Updike, New York City, for plaintiff; Mark D. Geraghty, of counsel.

Ernest A. Burguieres, III, New Orleans, La., for defendants.

## OPINION

SWEET, District Judge.

Defendants Rory D. Harris ("Harris") and Frederick J. Rambeau, III ("Rambeau") have moved pursuant to Fed.R. Civ.P. 12(b)(2) for an order dismissing the complaint for lack of personal jurisdiction and, in the alternative, pursuant to 28 U.S. C. § 1404(a) for an order transferring this case to the Eastern District of Louisiana. Plaintiff Frederick M. Glass ("Glass") has moved pursuant to Fed.R.Civ.P. 56 for an order granting summary judgment in his favor against the defendants for amounts due on a promissory note in unpaid principal and interest accrued thereon, together with attorneys' fees. Upon the findings and conclusions set forth below, defendants' motions to dismiss for lack of personal jurisdiction are granted.

*Background*

Glass is a resident of New York City. Harris and Rambeau are residents of Louisiana. On August 18, 1987, Harris and Rambeau jointly executed the Note promising to pay Glass $50,000 plus interest at a rate of 8% per annum. The Note is payable to Glass in New York City on demand. The Note also contains an integration clause which provides:

> All parties hereto further severally agree that this note evidences and sets forth their entire agreement with the holder hereof, that they hereby consent to all the terms and conditions hereof, and that no modification shall be binding unless hereon endorsed in writing and signed by the parties.

In their affidavits submitted in connection with the instant motions, Harris and Rambeau state that they executed the Note as security for the $50,000 payment they received from Glass and for the satisfactory completion of an oral contract between the parties. Harris and Rambeau allege that Glass owned certain real estate property in Louisiana through a Louisiana partnership known as the Riverbottom Investment Partnership ("RIP"). They also allege that a Louisiana lender, the Greater New Orleans Homestead ("Homestead"), held a mortgage on the property which was secured by a personal guarantee signed by Glass. After RIP defaulted on its mortgage payments, Glass sought to obtain relief from his guarantee by returning the mortgaged property to Homestead in exchange for forgiveness on the debt, an arrangement known in Louisiana as a "dation en paiement."

Harris and Rambeau contend that Glass engaged them to assist in the negotiation of a dation en paiement with Homestead in exchange for a fee of $175,000. Harris and

Rambeau contend that after successfully negotiating a decrease in the mortgage interest rate from 13% to 8%, they received in December 1986 $20,000 from Glass in partial payment on the parties' oral agreement. In connection with the negotiation of the dation en paiement, Glass met with Harris and Rambeau in Louisiana on August 18, 1987. At that meeting, Harris and Rambeau executed the Note and Glass gave them a certified check for the amount of $50,000 made out to Rambeau which he then, at defendants' request, altered by adding Harris as a payee as well. After Glass had returned to New York, Harris and Rambeau discovered that their bank in Louisiana would not honor the check because of the alteration. On August 21, 1987, Harris and Rambeau travelled to New York to pick up another check from Glass for the same amount which they immediately cashed at a bank in New York City.

In opposition to the defendants' motions to dismiss, Glass has submitted an affidavit in which he contests defendants' claim that the $50,000 represented partial payment of a fee as opposed to a loan. Glass has not attempted to rebut the remainder of the defendants' sworn affidavits concerning the real estate transaction in connection with which the defendants contend the Note was executed. Harris and Rambeau have submitted an unsigned copy of a dation en paiement for the RIP property dated August 18, 1987.

On January 18, 1988 plaintiff made a written demand for payment of the principal and interest due on the Note. In response, defendants commenced an action against Glass and other RIP partners in January 1988 in Louisiana state court to recover the balance due on the alleged oral contract.

*Personal Jurisdiction*

■ In a diversity action, the law of the state in which the district court sits governs personal jurisdiction over a nonresident defendant. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985). Glass contends that personal jurisdiction exists over Harris and Ram-

beau pursuant to section 302(a)(1) of the New York Civil Practice Law and Rules (McKinney's 1972 & Supp.1988) which permits "a court [to] exercise personal jurisdiction over any nondomiciliary, ... who ... transacts any business within the state" on a cause of action that arises out of that transaction. Although a finding of jurisdiction must, of course, be particular to the facts of the individual case, *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir.1983), jurisdiction under section 203(a)(1) normally exists if the "totality of the circumstances," *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873 (2d Cir.1975), establishes that the defendant "purposely availed himself of the privilege of conducting activities in New York State." *Current Textiles Corp. v. Ava Indus., Inc.*, 624 F.Supp. 819, 821 (S.D.N.Y.1985).

■ Glass contends that by coming to New York to pick up and cash the $50,000 check, Harris and Rambeau purposefully availed themselves of the privilege of conducting activities in New York. Glass relies on *Sterling Nat'l Bank and Trust Co.*, 510 F.2d 870 (2d Cir.1975), *First City Federal Savings Bank v. Dennis et al.*, 680 F.Supp. 579 (S.D.N.Y.1988), and *Catalyst Energy Dev. Corp. v. Iron Mountain Mines, Inc.*, 630 F.Supp. 1314 (S.D.N.Y. 1986) as cases in which courts from this Circuit have found personal jurisdiction over defendants who had executed promissory notes outside New York that were payable in New York. However, as discussed below, in each of these cases the court relied upon significant additional contacts between the defendant and New York to overcome the general rule that a promissory note made payable in New York cannot alone subject the borrower to personal jurisdiction in New York. *See American Recreation Group, Inc. v. Woznicki*, 87 A.D.2d 600, 488 N.Y.S.2d 51 (2d Dep't 1982); *Wirth v. Prenyl, S.A.*, 29 A.D.2d 373, 288 N.Y.S.2d 377 (1st Dep't 1968); *Hubbard, Westervelt & Mottelay, Inc. v. Harsh Building Co.*, 28 A.D.2d 295, 284 N.Y.S.2d 879 (1st Dep't 1967).

Thus, in *Sterling Nat'l Bank & Trust,* the court relied on the fact that the proceeds of the loan had initially been deposited in the borrower's New York account with the lender and then, at the borrower's direction, transferred to another New York bank account, that the borrower had maintained a substantial compensating balance in its New York account, and that a representative of the borrower had visited the lender in New York. *Sterling Nat'l Bank & Trust,* 510 F.2d at 873. In *First City v. Dennis,* the borrowers had executed promissory notes that expressly provided they would be governed by New York law, had authorized an agent in New York to assist in procuring the loans, and had ratified the acts of another agent who had visited New York in connection with the underlying transaction. *First City v. Dennis,* 680 F.Supp. at 584–86. Finally, in *Catalyst Energy,* the court found that the borrower had signed a note to be governed by New York law, had directed that the loan be paid directly into its account in New York, and had directed numerous telephone and written communications to New York regarding the underlying transaction and the negotiation of the note. *Catalyst Energy Dev. Corp. v. Iron Mountain Mines,* 630 F.Supp. at 1315–17.

Here, apart from executing a promissory note in Louisiana which was made payable in New York, the defendants' sole contact with this forum was their visit to pick up the revised check and cash it. In their affidavits, Harris and Rambeau contend that Glass refused to wire the money or to mail the check to them in Louisiana and, therefore, they were required to come to New York. In his affidavit, Glass disputes this assertion and contends the defendants voluntarily chose to come to New York and to cash the check at a New York City bank before leaving. The parties' disagreement on this issue is not material, for the fact remains that the $50,000 check was simply a replacement for the original check that had been issued by Glass in Louisiana at the time of the execution of the Note.

Under the totality of the circumstances presented by this case, Harris and Rambeau did not purposefully avail themselves of the privilege of conducting activities in New York, nor could they reasonably have anticipated being haled into court in New York. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). Upon the findings and conclusions set forth above, the motions to dismiss the complaint are granted. Plaintiff's motion for summary judgment is, therefore, moot.

IT IS SO ORDERED.