Kenneth H. WALKER, Peter C. Morse, Jonathan S. Linen, and Marcie Kennedy, Plaintiffs,

v.

Linda SMITH, Ronald Smith, James L. Ford, and L. Lee Weber, Individually and d/b/a FaceCake Marketing Technologies, Inc., Defendants.

No. 02 Civ. 4156(RWS).

United States District Court, S.D. New York.

April 15, 2003.

Fenster & Kurland, New City, NY (Adam K. Kurland, of counsel), for plaintiffs.

Lord, Bissell & Brook, Atlanta, GA (Thomas D. Sherman, Albert M. Myers, III, of counsel), for defendants.

## OPINION

SWEET, District Judge.

The plaintiffs Kenneth H. Walker ("Walker"), Peter C. Morse ("Morse"), Jonathan S. Linen ("Linen") and Marcie Kennedy ("Kennedy") (collectively, the "Plaintiffs"), have moved for summary judgment pursuant to Rule 56, Fed.R.Civ. P., against Linda B. Smith ("Smith"), Ronald Smith ("R.Smith"), James L. Ford ("Ford") and L. Lee Weber ("Weber"), d/b/a FaceCake Marketing Technologies, Inc. ("FaceCake") (collectively, the "Defendants"). The Defendants have cross-moved to dismiss for lack of jurisdiction pursuant to Rule 12(b)2, Fed.R.Civ.P., for improper venue pursuant to Rule 12(b)3, Fed.R.Civ. P., and 26 U.S.C. § 1406(a), and for summary judgment pursuant to Rule 56, Fed. R.Civ.P.

For the reasons set forth below, the Plaintiffs' motion for summary judgment is denied, the cross-motion of the Defendants to dismiss for lack of jurisdiction is granted as to certain defendants, and their cross-motion for summary judgment to dismiss the complaint is granted.

### Prior Proceedings

This action was commenced on June 3, 2002. The action was reassigned to this Court as related to *Retail Options, LLC v. FaceCake.com, Inc., et al.,* 02 Civ. 4155(RWS).

No discovery has been had.

The instant motions were heard and marked fully submitted on January 29, 2003.

### The Facts

The facts set forth below are based upon the parties' Local Rule 56.1 statements and the complaint.

Walker is a resident of New York, New York. Morse is a resident of West Conshohocken, Pennsylvania. Linen is a resident of Summit, New Jersey. Kennedy is a resident of Wynnewood, Pennsylvania.

Smith is a resident of Woodland Hills, California and the chief executive officer ("CEO"), director and shareholder of Facecake. R. Smith is a resident of Atlanta, Georgia and an officer, director and

shareholder of FaceCake. Ford is a resident of Hilton Head, South Carolina, chief financial officer, director and shareholder of FaceCake. Weber is a resident of Atlanta, Georgia and a shareholder of Face-Cake.

Walker, Morse, Linen and Kennedy received notes in the amount of $50,000, $50,000, $25,000, and $100,000, respectively, executed by FaceCake Marketing Technologies, Inc. ("FaceCake Marketing") (the "Notes"). Philip Schein ("Schein") and Richard Costello ("Costello"), alleged by Defendants to be California residents, assigned similar notes in the amount of $25,000 and $50,000 respectively to Walker. The Notes were issued in March and April 2001.

Notice of default upon the Notes has been served upon the maker of the Notes, but the defaults are disputed by the Defendants.

The maker of the Notes was incorporated in California as FaceCake.com Inc. Its name was changed to FaceCake Marketing Technologies, Inc. It has also used the name FaceCake Beautiful Technologies. The payment for the Notes was made by checks or money wires payable to Face-Cake.com. The Defendants are officers, directors or shareholders of the maker of the Notes which will be referred to as FaceCake.

The Notes were issued to finance the activities of FaceCake and were signed by Smith with the title CEO. The facts and circumstances giving rise to the financing are in dispute. It was anticipated that Walker and a corporation with which he was affiliated, Retail Options, LLC ("Retail Options"), would assist FaceCake in sales and development.

The Notes were executed in California and delivered in California, by their terms governed by the law of California, and payable at the residences of the Plaintiffs.

FaceCake has its office and accounts in California, does no business in New York, and, as of the filing of the complaint, has not derived any income from New York. A promotional pamphlet of FaceCake bearing the title of FaceCake Beautiful Technologies lists an office in Woodland Hills, California and contains a reference to Los Angeles and New York.

Correspondence, fax and wire transmissions were exchanged between New York (primarily addressed to Walker) and California in connection with the financing and the making of the Notes.

Smith travelled to New York in the conduct of FaceCake business. She has alleged that at only one meeting in New York on March 8, 2001, "[t]here was some discussion in passing about the Term Sheet and the Notes" (Smith Reply Aff. 1/28/03, ¶ 11(i)), and that the remaining meetings involved primarily sales efforts. Weber had no role in the negotiation of the Notes, has no connection with New York, and has not been in New York in connection with FaceCake matters. Ford had one meeting in New York in January 2001 on FaceCake matters which did not involve the Notes. R. Smith had a meeting in New York in June 2001 on FaceCake matters which did not involve the Notes.

*The Plaintiffs Have Not Met Their Burden To Establish Jurisdiction As To Defendants R. Smith, Ford And Weber*

Plaintiffs have the burden of establishing, by a preponderance of the evidence, that personal jurisdiction lies over Defendants. *Plaza Realty Investors v. Bailey,* 484 F.Supp. 335, 344 n. 6 (S.D.N.Y. 1979). In a diversity action, the Court must determine jurisdiction according to the law of the state in which it sits. *John Burgee Architects v. Lewis,* No. 96 Civ. 0734(RPP), 1998 WL 35111, at *1 (S.D.N.Y. Jan.30, 1998).

■ General jurisdiction does not exist over Defendants, none of whom do business in New York, are domiciled here, were physically present at the time of service, or consented to jurisdiction. Accordingly, jurisdiction is proper only if New York's long-arm statute, N.Y.C.P.L.R. § 302 (McKinney's 2002), which addresses various acts conferring "specific jurisdiction," is satisfied. Moreover, since their claims arise out of the Notes, Plaintiffs must show that Defendants, in connection with the Notes, "transact[ed] ... business within the state...." N.Y. C.P.L.R. § 302(a)(1). Jurisdiction is proper under Section 302(a)(1) only if it can be established that Defendants purposefully availed themselves of the privilege of conducting activities in New York. *Glass v. Harris,* 687 F.Supp. 906, 908 (S.D.N.Y.1988). Federal due process requires that, for a defendant to be subject to personal jurisdiction, her activities must constitute purposeful efforts to invoke the benefits and protection of New York law. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

■ FaceCake, in issuing the Notes, did not invoke the benefits and protections of New York law. It is located in California, incorporated under California law, and did not have significant interactions with New York in connection with the Notes. Funds from the Notes were deposited in Face-Cake's bank account in California. They were governed by California law. They were executed and delivered in California. None of the Defendants visited New York in connection with the Notes.

Communications were directed into New York by certain of the Defendants in connection with the Notes. Without more, however, this does not confer personal jurisdiction. *Plaza Realty,* 484 F.Supp. at 346; *Fiedler v. First City Nat'l Bank Houston,* No. 85 Civ. 8911, 1986 WL 6003 (S.D.N.Y. May 16, 1986), *aff'd,* 807 F.2d 315 (2d Cir.1986). Contacts with New York as tenuous as Defendants' have repeatedly been held not to confer personal jurisdiction. *CMNY Capital, L.P. v. Perry,* No. 97 Civ. 6172(MBM), 1998 WL 132846, at *1–6 (S.D.N.Y. Mar.23, 1998) (agreements were not negotiated in New York but by telephone and mail from other states, were executed in Connecticut, and were governed by Rhode Island law; defendant visited New York on other occasions to discuss parties' overall business relationship); *EMI Film Distributors, Ltd. v. L.D.S. Film Co.,* 404 F.Supp. 204 (S.D.N.Y.1975) (notes were executed and payable in California; defendant made a single visit to New York on other business); *Wirth v. Prenyl, S.A.,* 29 A.D.2d 373, 375, 288 N.Y.S.2d 377 (1st Dep't 1968) (note in connection with shipment of goods to Argentina was delivered, completed, and made payable in New York solely to accommodate payee); *Glass,* 687 F.Supp. at 909 (defendants visited New York once to pick up a check); *John Burgee,* 1998 WL 35111, at *2 (notes were payable in New York and governed by New York law, but defendants never visited, communicated, or deposited money in New York); *First City Sav. Bank v. Keener,* 685 F.Supp. 58, 60 (S.D.N.Y.1988) (notes were payable in New York but they and ancillary documents were meant to achieve one end, financing of a Texas investment).

Plaintiffs have also asserted jurisdiction over Defendants for their fraud claim. Jurisdiction with respect to that claim would be determined under CPLR 302(a)(2) or (3), which address tortious acts committed within and without New York, respectively. Here, again, Plaintiffs claim injury through Defendants' alleged nonpayment of the Notes. But, even assuming it occurred, such a failure occurred in California, not New York, and jurisdiction under Section 302(a)(2) would not exist.

*See Sec. Nat. Bank v. Ubex Corp.*, 404 F.Supp. 471, 473–74 (S.D.N.Y.1975) (no jurisdiction over drawee bank with respect to non-payment of draft; alleged tort, non-payment, occurred at bank's office in Texas).

Finally, CPLR 302(a)(3), which addresses tortious acts committed outside New York causing injury in New York, would not confer jurisdiction. Again, simple non-payment to Plaintiffs in New York is not enough. *See Sec. Nat.*, 404 F.Supp. at 474–75 (no jurisdiction where injury existed in New York solely because of plaintiff's domicile there; CPLR § 302(a)(3) "looks to the imparting of the original injury within" New York "and not to the resulting damage which may be consequentially caused there"); *CMNY Capital*, 1998 WL 132846, at *7–8 (no jurisdiction with respect to tort claims, including fraud, based on failure to share proceeds from sale of Rhode Island radio stations). In any event, Defendants do not satisfy the further predicates of CPLR § 302(a)(3), since none derive "substantial revenue" from New York or otherwise engage in a "persistent course of conduct" in New York.

Plaintiffs contend that New York contacts by Defendants in connection with their "overall business relationship" establish personal jurisdiction and venue. (Pls.' Mem. at 13–15 (*citing China Union Lines v. American Marine Underwriters*, 454 F.Supp. 198, 202 (S.D.N.Y.1978)).) This is not so. *St. Paul Fire & Marine Ins. Co. v. Eliahu Ins. Co., Ltd.*, No. 96 Civ. 7269(MBM), 1997 WL 357989, at **3, 9 (S.D.N.Y. June 26, 1997) (holding that there must be a "substantial nexus" between the business transacted and the cause of action sued upon and criticizing *China Union Lines* for its "overly broad view of the long-arm statute"); *aff'd*, 152 F.3d 920, 1998 WL 385976 (2d Cir.1998); *CMNY Capital*, 1998 WL 132846, at *5 (in order for New York-based contractual negotiations to confer jurisdiction, they must relate to the same agreement that is the subject of plaintiff's lawsuit).

Plaintiffs note that payments on two of the Notes were to be sent to investors in New York. But payments on the five other Notes were to be sent elsewhere, including two investors in California. *See Waldorf Assocs. v. Neville*, 141 Misc.2d 150, 533 N.Y.S.2d 182, 185 (1988) (giving of a promissory note, executed outside New York but payable in New York, does not confer jurisdiction), *aff'd*, 155 A.D.2d 283, 547 N.Y.S.2d 556 (1st Dep't 1989).

Plaintiffs place primary reliance on alleged physical meetings in New York by Smith. (Pls.' Mem. at 12–13, 15, 18.) Plaintiffs' evidence in this regard is contravened by the Smith submission that the alleged meetings either: (a) never took place; (b) did not take place in New York; (c) were telephone meetings; or (d) did not concern the Notes and as to one meeting when the Notes were discussed, the March 8 meeting, the Notes were only discussed in passing. (Smith Reply Aff. ¶¶ 9–12.) As such, these meetings do not confer jurisdiction on Defendants R. Smith, Ford and Weber. *See CMNY Capital*, 1998 WL 132846, at *4 (New York-based contractual negotiations can confer jurisdiction only if they "substantially advanced or were substantively important or essential to the formation of the contract.").

The Notes and Term Sheet were discussed, negotiated, and finalized through face-to-face meetings in Los Angeles, as well as through fax, mail, e-mail, and telephone communications between FaceCake in California and Retail Options in New York and Philadelphia.

Accordingly, representations forming the basis of their fraud claims that FaceCake was validly incorporated and that the company had the resources to repay the Notes, took place in physical meetings in

New York, are rebutted by Smith. In the absence of any connection between R. Smith, Ford and Weber and New York, the motion to dismiss for lack of jurisdiction on their part is appropriate.

As to Smith, it can be concluded that a *prima facie* case for jurisdiction has been made out by the Walker affidavit, many of the allegations of which have been denied by Smith. A hearing on the jurisdictional facts would be required were it not for the resolution of the summary judgments set forth below.

### The Summary Judgment Standard

Summary judgment is granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); see generally 6 James Wm. Moore, et al., Moore's Federal Practice ¶ 56.15 (2d ed.1983). The court will not try issues of fact on a motion for summary judgment, but, rather, will determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party has the burden of showing that there are no material facts in dispute, and the court must resolve all ambiguities and draw all reasonable inferences in favor of the party opposing the motion—in this instance, the Defendants. *Bickhardt v. Ratner*, 871 F.Supp. 613 (S.D.N.Y.1994) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Thus, "[s]ummary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Richard-*

*son v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).

A material fact is one that would "affect the outcome of the suit under the governing law," and a dispute about a genuine issue of material fact occurs if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 57 (2d Cir.1997).

### The Plaintiffs Have Failed To Establish The Personal Liability Of Smith

The Plaintiffs have failed to establish the personal liability of the Defendants by material, uncontroverted facts.

The Notes, by their terms, were issued in March and April 2001 by "FaceCake Marketing Technologies, Inc." Moreover, the signature line of each Note is the same:

FACECAKE MARKETING TECHNOLOGIES, INC., a California corporation

By: /s/ *Linda Smith*

Name: Linda Smith

Title: CEO

■ This type of signature line, in which a corporate officer, clearly identified as such, signs on behalf of a corporation, is understood as binding only the corporation, and not the officer personally. Cal. Com.Code § 3402(b)(1) (West 2003) ("If the form of the signature shows unambiguously that it is made on behalf of the represented person who is identified in this instrument, the representative is liable on the instrument."); N.Y. U.C.C. § 3–403 cmt. 3 (McKinney's 2002) (principal's name, followed by signature line for agent beginning with word "by," and agent's title, is "the unambiguous way" to make clear that the agent signs in a representative capacity only and is not to be personally bound.). Since FaceCake is a

California corporation and the Notes were executed in California, delivered in California, to be performed in California, and governed by California law, California law applied. However, the law of both California and New York is consistent.

Courts since the nineteenth century have dismissed actions seeking to hold corporate officers and other agents personally liable, where the fact of agency has been made as clear as it was here. *E.g., Farmers' & Mechanics' Bank v. Colby,* 64 Cal. 352, 28 P. 118 (1883); *Blanchard v. Kaull,* 44 Cal. 440, 448–50 (1872); *In re Bohack Corp.,* 2 B.R. 556, 559–60 (Bankr.E.D.N.Y. 1980); *D.P. Promotions, Ltd. v. SelecTV of America, Ltd.,* 99 A.D.2d 717, 472 N.Y.S.2d 323 (1st Dep't 1984); *Union Nat'l Bank v. Scott,* 53 A.D. 65, 70, 66 N.Y.S. 145 (3d Dep't 1900).

Further, as the Notes themselves show, neither Smith nor anyone affiliated with FaceCake ever indicated an intention to be personally bound, such as by signing the Notes separately in a personal capacity or by giving a personal guarantee. There is no evidence that such a guarantee was requested, which distinguishes the authorities cited by the Plaintiffs.

To avoid this application of established commercial law, the Plaintiffs assert that there is no such corporation as FaceCake Marketing Technologies, Inc. However, the Plaintiffs have not evidenced any material facts to dispute that FaceCake has been in continual existence since it was incorporated in March 2000, that Face-Cake.com, Inc. was registered with the California Secretary of State from March 2000 to July 2002, and that the change of name to FaceCake Marketing Technologies, Inc. has existed since July 2002. When the Notes were issued in March and April 2001, FaceCake was known primarily as FaceCake Marketing Technologies, Inc., a name apparently suggested by Walker.

In issuances of commercial paper such as the Notes, there is no particular requirement for how the maker is identified, and the maker may be identified by a trade name or assumed name associated with it. Cal. Com.Code § 3401(b)(2) (West 2003) (signature on an instrument may be made "by the use of any name, including a trade or assumed name"); *id.* cmt. 1 ("not necessary that the name of the obligor appear on the instrument, so long as there is a signature that binds the obligor"); *id.* cmt. 2 (signature "may be made in any name, including any trade name or assumed name, however false and fictitious, which is adopted for the purpose"); N.Y. U.C.C. § 3–401(2) & cmt. 2 (McKinney's 2002) (same). *McCollum v. Steitz,* 261 Cal.App.2d 76, 80, 67 Cal.Rptr. 703, 706 (1968) (partnership bound by signature on note in its trade name of "Desert Inn"); *Sec. Pac. Nat'l Bank v. Chess,* 58 Cal. App.3d 555, 561, 129 Cal.Rptr. 852, 855 (1976) ("[A] party may adopt any form of symbol as its signature for a particular transaction.").

In addition, the Defendants assert affirmative defenses to the Notes, including the propriety of the assignment of the Notes issued to non-diverse holders. These factual issues bar a grant of summary judgment.

Since the Plaintiffs have failed to adduce any undisputed material facts to establish the personal liability of any of the Defendants, including Smith, and because factual issues have been presented, the Plaintiffs' motion for summary judgment is denied.

***The Facts Establish That Any Liability On The Notes Is That Of The Corporation***

The facts submitted by the parties establish that FaceCake was incorporated as FaceCake.com, Inc. in March 2000, and has been in continual, lawful existence since then and was known by Walker and

the other investors as FaceCake Marketing Technologies, Inc. throughout 2001; the Plaintiffs were acquaintances of Walker and were introduced to FaceCake through him; the Notes and the Term Sheet describing the underlying transaction were drafted by counsel for Retail Options and issued by FaceCake Marketing Technologies, Inc., the Notes executed by Linda Smith as CEO, and paid for by writing a check, or wiring money, to Face-Cake.com, Inc. At no time were any funds in payment for the Notes transferred to, or used by, anyone but FaceCake.

These facts, unchallenged by an affidavit based on knowledge, establish corporate liability, if any, not personal liability.

■ The use of a trade name, similar to its legal name, will not replace corporate liability with personal liability on behalf of officers and directors. *Kimes v. Rasor*, 104 Cal.App. 201, 202–03, 285 P. 359 (Cal. Ct.App.1930) (holding that the variance between the legal name of a corporation and the name used in a financial instrument is immaterial where there is no consequent confusion); *Mail & Express Co. v. Parker Axles*, 204 A.D. 327, 328, 198 N.Y.S. 20 (1st Dep't 1923) (use of a name other than the granted or legal corporate title of one party in an agreement with another party is wholly immaterial to the validity of a contract between the corporation and the other party in any suit upon the contract); *Sunstone at Colorado Springs Homeowners Ass'n, Inc. v. White*, 56 P.3d 127, 129–30 (Colo.Ct.App.2002) (collecting cases); 6 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations*, § 2442 (West 2002) (contracts entered into by or with a corporation under an assumed name may be enforced by either party, if the identity of the corporation is established by sufficient evidence); 19 C.J.S. *Corporations* § 711 (West 2002) ("Where there is a misnomer of the corporation in the contract or obli-

gation sued on, the corporation may sue or be sued, and recovery may be had by or against it, in its true and proper corporate name.").

Moreover, the Plaintiffs did not follow the procedural prerequisites to sue the Defendants personally. The notice, and a 30–day cure period were alleged to have been provided to FaceCake, not the Defendants.

Although the Plaintiffs dispute that they were given "unfettered access to Face-Cake's corporate books and records," and claim that they did not know what the legal name of FaceCake was when they bought the Notes, they, nonetheless, proceeded with the transaction.

■ Plaintiffs assert that when the Notes were issued the legal name of Face-Cake had not yet been changed to Face-Cake Marketing Technologies, Inc. This, they claim, means that the Notes were issued by a "fictitious" or "nonexistent" company. However, there were not two companies and the use of a fictitious name does not create a separate legal entity. *Pinkerton's, Inc. v. Superior Court*, 49 Cal.App.4th 1342, 1348–49, 57 Cal.Rptr.2d 356 (1996) (collecting cases). Here, there is no material fact at issue as to the existence of just one corporation with a change of name.

The Plaintiffs have suggested that Face-Cake did not formally file for a name change until the Defendants were sued personally. But, as the cited authorities demonstrate, the name change is not determinative. At most the Plaintiffs allegedly have "been disappointed, not in failing to get the promise which [they] supposed, but in [their] performance, a risk inherent in any contract." *Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 F.2d 265, 267 (2d Cir.1929) (L.Hand, J.) (dismissing complaint against a subsidiary

based on a contract knowingly entered into with the parent corporation).

In the absence of any evidentiary showing to establish the personal liability of the Defendants, it is appropriate to grant summary judgment on their behalf dismissing the complaint.

**Conclusion**

Because there is no jurisdictional basis for a claim against R. Smith, Ford and Weber, their motion to dismiss under Rule 12(b)6 is granted.

Because the Plaintiffs have failed to establish personal liability of the Defendants, including Smith, their motion for summary judgment is denied. Because there are no facts submitted on which personal liability can be based, the Defendants' motion for summary judgment dismissing the complaint is granted.

Enter judgment on notice.

It is so ordered.