**Paul D. KAY, M.D., Plaintiff,**

v.

**James Edward FOWLER and Pauline N. Fowler, Defendants.**

**No. CA 83–1876.**

United States District Court, District of Columbia.

May 9, 1984.

Kevin M. O'Connell, Rockville, Md., for plaintiff.

Douglas J. Rykhus, Washington, D.C., for defendants.

## MEMORANDUM OPINION

JOHN GARRETT PENN, District Judge.

The plaintiff filed this action to obtain judgment on a note in the amount of $19,-000 which was allegedly executed by the defendants, James E. Fowler and Pauline N. Fowler, husband and wife, on March 5, 1982. Defendant James E. Fowler has never been served. Pauline N. Fowler was served and she filed an answer and a cross-claim and a separate counterclaim seeking to quiet title to real property which was purportedly subject to the deed of trust executed on or about the same date as the note at issue in this case. Pauline Fowler, hereinafter sometimes referred to as the defendant, thereafter filed a motion for summary judgment and that motion was granted. *See* Order filed October 31, 1983. The action against James Fowler was dismissed when plaintiff could not make service upon him. *See* Orders filed December 13, 1983, and December 30, 1983. The case is now before the Court on defendant's motion for attorney fees.

## I

The underlying facts are as follows: James and Pauline Fowler were married and at some point in time purchased a home located at 636 14th Street, N.E., in the District of Columbia. On or about March 5, 1982, two persons, purporting to be James and Pauline Fowler, borrowed $19,000 from the Central Mortgage and Investment Co., Inc., and signed a note, deed of trust [1] and other settlement papers. Complaint Exhibit A. Under the terms of the note, they were to make monthly payments of $285 per month, commencing on April 5, 1982. No payments were ever made on the note. Apparently, the plaintiff purchased the house at a foreclosure sale.

When this matter was brought to the attention of the defendant in August 1982, she advised the plaintiff and Chelsea Title & Guaranty Company (Chelsea), that the signatures on the note and the deed of trust were that of her husband, but that she was unaware of the loan, had not signed any of the documents and had not received any proceeds of the loan. She thereafter retained counsel to represent her.

The defendant's attorney obtained several specimen signatures from her and at the request of Mr. Yewell, personal counsel for the plaintiff, submitted those specimens to him for his examination. Fowler Response Exhibit A. Counsel for the plaintiff examined the signatures submitted on behalf of the defendant with those on the note, deed of trust and other settlement documents, and concluded that the signatures on the instruments did not match those submitted by the defendant. On October 20, 1982, counsel for the plaintiff wrote the defendant's attorney and advised him that, "[t]here appears to be no question that the forgery occurred." Fowler Motion Exhibit B. He suggested that the "handiest" and "least uncomfortable way to settle this problem may be to have Mr. and Mrs. Fowler sell the house with Mr. Fowler's proceeds of sale being utilized to discharge the Second Trust as well as the cost incurred in foreclosure." *Id.* Defendant's counsel corresponded with counsel for Chelsea in February 1983 concerning the same matter, and counsel for Chelsea communicated with both counsel for the plaintiff and counsel for the defendant. *See* Fowler Motion Exhibits C and D; Fowler Response Exhibits C and D. Finally, on May 6, 1983, counsel for Chelsea, the attorney who actually filed this action on behalf of the plaintiff and the carrier, wrote James Fowler noting that "it has ... been verified by the lender and [Chelsea] that

---

**1.** This deed of trust was the second deed of trust on the property.

this sum of money was obtained by you by the use of fraud and that the woman purported to be your wife ... at the time of the settlement was not your wife, and that the signature purported to be that of Pauline Fowler, which appears on the note, deed of trust, and other settlement documents executed in March 1982 was therefore a forgery." Fowler Response Exhibit E. There is no evidence that James Fowler either received or responded to the above letter. Plaintiff filed this action on June 29, 1983.

The defendant filed her motion for summary judgment on September 12, 1983. Plaintiff filed a one paragraph opposition to the motion on October 25, 1983, in which he, in effect, admitted the facts set forth in the defendant's Statement of Material Facts as to Which There Is No Genuine Dispute.[2] Thus, the plaintiff has admitted that the loan papers were not signed by the defendant.

## II

The defendant argues that the plaintiff and the carrier had been advised of the forgery from six months to one year before this action was initiated, and that the fact that this action was nevertheless filed against her, "exhibits sufficient bad faith and malice to support an award of attorney fees." Fowler Memorandum at 1. Plaintiff's only response is that the carrier was "obligated to exercise all due diligence in pursuing such claims and in attempting to resolve such conflicts." Plaintiff Answer to Motion at 1. Plaintiff continues on to state that when the complaint was filed, the carrier "sincerely believed that a reasonable doubt existed as to whether a forgery had been committed or not." *Id.* Plaintiff further contends that the carrier was not aware of the letter of October 20, 1982 which was written by Mr. Yewell, personal counsel for Dr. Kay. *Id.*

■ The general rule concerning attorney fees is known as the "American Rule" and provides, that in the absence of statu-

tory authority, or agreement, for example, a provision in a contract allowing for attorney fees, "the prevailing party may not recover attorneys' fees as costs or otherwise." *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 245, 95 S.Ct. 1612, 1615, 44 L.Ed.2d 141 (1975). However, an exception to the American Rule allows for the award of attorney's fees "against a party who ha[s] acted in bad faith." *Id.*

In the District of Columbia, it is provided that, "absent a contract or statutory provision or a showing that the defendant's conduct was willfully and oppressively fraudulent, attorney's fees are not generally allowed as damages or costs." *McIntosh v. Aetna Life Insurance Co.*, 268 A.2d 518, 521 (D.C.App.1970). *See also, Wisconsin Avenue Associates, Inc. v. 2720 Wisconsin Avenue Cooperative Association, Inc.*, 441 A.2d 956, 968 (D.C.App.1982); *AFSCME v. Ball*, 439 A.2d 514 (D.C.App.1981); *Bay General Industries, Inc. v. Johnson*, 418 A.2d 1050, 1057, n. 20 (D.C.App.1980); *Trilon Plaza Co. v. Allstate Leasing Corp.*, 399 A.2d 34, 37–38 (D.C.App.1979).

The defendant contends that she is entitled to attorney fees in this case because the plaintiff's attorney agreed in his letter of October 20, 1982, that someone had forged her signature and because the carrier, in a letter from its counsel to Mr. Fowler in May 1983, had reached the same conclusion.

While this Court can accept an argument that, even though a party may suspect that the instrument he sues on is a forgery, he nevertheless may be entitled to bring his action and put the named defendant to her proof, the facts in this case reveal that the plaintiff and his counsel were in fact satisfied that there had been a forgery. Indeed, as noted above, Part I *supra*, Dr. Kay's personal attorney stated in October 1982 that "[t]here appears to be *no question* that the forgery occurred" (emphasis the Court's). The record reflects that at or

---

**2.** Plaintiff's failure to file a "Statement of Genuine Issues" led the Court to assume that the facts

set forth in defendant's statement were admitted. *See* Local Rule 1–9(h).

about the same time, Dr. Kay's attorney communicated with counsel for Chelsea and presumably repeated his conclusion that there had been a forgery. Likewise, there seems to be no question that Chelsea's attorney reached the same conclusion because he wrote Mr. Fowler and advised him that, "it has ... been *verified*" that the money was obtained by fraud and that the woman who signed was not the defendant, Pauline Fowler. Chelsea's counsel noted that the note, deed of trust and other settlement documents contained the forged signature of the defendant. Chelsea wrote that letter on May 6, 1983 but nevertheless instituted this action in the name of Dr. Kay on June 29, 1983.

The fact that the plaintiff had obtained no new information implicating the defendant as either the person who signed the documents or as a co-conspirator in the fraud, is evident from the failure of the plaintiff to present *any* defense to the defendant's motion for summary judgment. Plaintiff all but conceded that motion. Moreover, plaintiff does not cite any valid reason in defense of the present motion, for example, a need to join the defendant as a party in order to foreclose on the property, for naming her in this action. Plaintiff's action was brought on the note alone, no doubt because plaintiff realized that he could not reach the real property owned by Mr. and Mrs. Fowler because it was owned by them as tenants by the entireties. *See Estate of Wall*, 142 U.S. App.D.C. 187, 440 F.2d 215 (1971).

Under these facts and the existing law, one must wonder why then was this action brought against the defendant. Since Mr. Fowler has never been served and since he and another woman apparently applied and obtained the loan, and have since disappeared, the Court must assume that the plaintiff and the carrier, finding no one else to look to in the carrier's attempt to collect the money, made a deliberate decision to sue the defendant notwithstanding their realization that she was not liable on the note. While this Court recognizes that the lender, the carrier and Dr. Kay are the victims of the fraud apparently perpetuated upon them by Mr. Fowler and his friend, that does not justify the maintenance of this action against the defendant when there was clear and convincing evidence *prior* to the institution of this action that she too was the victim of the same fraud.

■ Since it is undisputed that the plaintiff and his counsel had every opportunity to satisfy themselves *prior* to the institution of this action that the defendant did not sign the loan instruments, and that they in fact did satisfy themselves that the documents contained the forged signatures of the defendant, and since the plaintiff has cited no other reason for joining the defendant in this case, the Court can only conclude that the action was brought against the defendant in bad faith, vexatiously and for oppressive reasons. Accordingly, the defendant is entitled to an award of attorney fees as part of her costs in this action.[3]

### III

The final question is the amount of fees to be awarded. Mrs. Fowler has requested the award of fees for services rendered beginning on October 8, 1982. The Court concludes however that the award of fees should date from the time Mrs. Fowler had to begin her defense of this action.[4] The defendant has requested fees in the amount of $75.00 per hour for her attorney and $30.00 per hour for the law clerk assigned to her attorney. The Court concludes that the above hourly rates are reasonable. The Court further finds that the hours allowable for counsel fees amounts to 10.30 hours after deducting 7.10 hours for those fees incurred prior to July 23, 1983, a date after the action was filed and the date upon which the defendant's an-

---

3. The Court also notes that had this case been filed after August 1, 1983, the Court could have awarded counsel fees pursuant to Fed.R.Civ.P. 11.

4. The actions of the plaintiff in 1982 did not amount to bad faith. At that time he and his counsel, and the carrier, were properly considering the contentions made by the defendant.

swer to the complaint was filed. The defendant does not give a breakdown of fees for the law clerk. In the absence of such a breakdown, the Court allows such fees to the same extent and in direct proportion to the allowance of counsel fees in this case. Therefore, counsel fees shall be awarded in the amount of $772.50 and law clerk's fees shall be awarded in the amount of $106.55, for a total award of $879.05.

An appropriate Order shall enter.

