**Frederick J. MURPHY, Plaintiff,**

v.

**Mario M. CUOMO, Thomas A. Constantine, Zarc International, Inc., Mark K. Klosowski, James Crandall, Randy Bush, Daniel K. Shea, Edward Vanderwall, John W. Wallace, Raymond G. Dutcher, Francis A. DeFrancesco, Steven Thomas, Cameron Logman, and Pamela Logman, Defendants.**

**No. 94–CV–0158.**

United States District Court, N.D. New York.

Feb. 2, 1996.

Office of Robert Ballan (Robert H. Ballan, of counsel), Norwood, NY, for Plaintiff.

Hinman, Howard Law Firm (Paul T. Sheppard, of counsel), Binghamton, NY, for Defendants Zarc International, Cameron Logman, and Pamela Logman.

Office of the Attorney General (Robert A. Siegfried, Asst. Atty. Gen., of counsel), Department of Law, Albany, NY, for Defendants Mario Cuomo, Thomas Constantine, Mark Klosowski, James Crandall, Randy Bush, Daniel Shea, Edward Vanderwall, John Wallace, Raymond Dutcher, Francis A. DeFrancesco, and Steven Thomas.

## MEMORANDUM–DECISION AND ORDER

McAVOY, Chief Judge.

### I. INTRODUCTION

**Plaintiff Frederick Murphy** originally commenced this action by filing a complaint on February 7, 1994, wherein he seeks to recover damages pursuant to 42 U.S.C. § 1983, along with injunctive relief, for alleged violations by defendants of the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, the Public Health Service Act ("PHSA"), 42 U.S.C. §§ 201 *et seq.*, the First, Fourth, Sixth, and Fourteenth Amendments, and New York Law. The injuries claimed arise from an incident in which a New York State Police Officer sprayed plaintiff with a "pepper" spray called CAP–STUN. **Defendant Zarc International** ("Zarc") produces CAP–STUN and, according to plaintiff, conspired with other defendants to undertake an "illegal human experiment" whereby innocent citizens would be sprayed in order to determine the spray's effects. Zarc now moves for summary judgment pursuant to Fed.R.Civ.P. 56(c).

### II. BACKGROUND

On February 20, 1993, plaintiff was arrested by New York State Police officers responding to a complaint lodged by plaintiff's wife. Although the parties disagree regard-

ing the nature of the complaint, they do not dispute the fact that plaintiff was intoxicated at the time. Plaintiff was taken to the State Police barracks for processing, and he admits that he was loud and argumentative. As plaintiff was unhandcuffed and about to be fingerprinted, he either lunged at one of the officers or at least was uncooperative. In response, one of the officers sprayed plaintiff with an Oleoresin Capsicum ("OC") or "pepper" spray with the brand name CAP–STUN.

CAP–STUN is a product produced by defendant Zarc and "sold to law enforcement and military organizations around the world as a non-lethal use of force alternative." (Def.'s Mem.Supp.Summ.J. at 2.) According to defendant, CAP–STUN was first developed in the 1970s. After performing "an exhaustive study" and arranging "a broad range of testing" of the product, Zarc acquired all rights to CAP–STUN and began distributing its own "enhanced" version of CAP–STUN. (*Id.* at 3.) At around the same time, the Federal Bureau of Investigations ("FBI") apparently completed a three-year study of CAP–STUN and approved its use by FBI agents.

In 1992 the New York State Police decided to implement a study ("Pilot Study") of OC spray in order to determine whether it would be appropriate for use by State Police officers. The State Police subsequently obtained quotes from various OC spray distributors, including a quote for CAP–STUN. The CAP–STUN quote apparently did not come from defendant Zarc, however. Instead, it was provided by Integrated Systems International ("ISI"), a South Carolina Corporation that marketed and distributed CAP–STUN under the name "CAP–STUN Weapon Systems." Plaintiff alleges that ISI is merely the marketing division of defendant Zarc and not a separate company.

In November, 1992, the State Police decided to use CAP–STUN in its Pilot Study, and a purchase order was submitted to ISI in South Carolina. On December 4, 1992, either ISI or defendant Zarc dispatched a CAP–STUN trainer to Albany, New York, to instruct and certify a small number of State Police officers in the use of the spray. These officers in turn trained a larger group of officers from around New York, and all of the officers were issued CAP–STUN upon their completion of the training program. Apparently, after December 4, 1992, there was no further direct involvement by any Zarc or ISI personnel in the State Police's Pilot Study.

Plaintiff was sprayed with CAP–STUN on February 20, 1993, by an officer who was issued the product after the training sessions. Plaintiff apparently concedes that defendant Zarc had nothing to do with the decision to spray plaintiff. On May 31, 1993, the Pilot Study was completed, and in October of the same year the State Police issued its report, which recommended that an OC spray be acquired. This report was issued to defendant Zarc. After competitive bidding, the State Police decided to purchase TAC–DOWN, an OC spray product that competes with CAP–STUN. Defendant Zarc wrote a letter objecting to the apparent plan to purchase TAC–DOWN, and subsequently filed a bid protest. Ultimately, however, the State Police decided not to use CAP–STUN.

In his Complaint, plaintiff levels a number of serious charges at Zarc and the other defendants. He generally claims that defendants have conspired to subject innocent and unwitting citizens of New York to an illegal experiment designed to test the effects of CAP–STUN. Plaintiff also suggests that defendants devised a "test protocol" whereby people would be sprayed for no reason other than to test CAP–STUN, the results of those exposures would be recorded, and the information forwarded to Zarc for its use. Finally, plaintiff alleges that he became a victim of this nefarious scheme on February 20, 1993, in violation of his federal statutory and constitutional rights. Plaintiff seeks $20 million compensatory and punitive damages, as well as an injunction preventing Zarc from selling CAP–STUN in New York and preventing the State Police from using CAP–STUN until it is approved by the proper federal authorities.

Discovery in this case is now complete and the trial date is fast approaching. On this motion for summary judgment, defendant Zarc argues that (1) it is not subject to personal jurisdiction in New York because it

is not "doing business" there; (2) plaintiff's "conspiracy" claims against Zarc "are entirely without basis in law or fact and should be dismissed," (*Id.* at 10); and (3) plaintiff's requested injunction should be denied because he lacks standing. Defendant has also moved for sanctions against plaintiff, including costs and attorneys' fees, pursuant to 28 U.S.C. § 1927 and Fed.R.Civ.P. 11.

## III. DISCUSSION

### A. *PERSONAL JURISDICTION OVER ZARC*

■ As in a diversity case, a district court having federal question jurisdiction over an action must look to the forum state's statutes to test personal jurisdiction. *See, e.g., Pilates, Inc. v. Pilates Inst., Inc.,* 891 F.Supp. 175, 179 (S.D.N.Y.1995). Thus personal jurisdiction over defendant Zarc, a Maryland corporation with operations in Bethesda, Maryland, is governed by N.Y.Civ. Prac.L. & R. ("CPLR") 301 and 302. Bare legal allegations by plaintiff may be sufficient to withstand a *dismissal* motion for lack of personal jurisdiction,[1] but "without factual support, [such allegations] fail to make a prima facie showing at the summary judgment stage, once discovery has occurred." *Ball v. Metallurgie Hoboken-Overpelt, S.A.,* 902 F.2d 194, 199 (2d Cir.), *cert. denied,* 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990). In other words, on the summary judgment motion at issue here—after discovery—*plaintiff* bears the burden of establishing whether jurisdiction is present.

#### 1. CPLR 301

■ The first possible basis for jurisdiction over defendant is New York CPLR 301, which authorizes general jurisdiction over a foreign corporation if the defendant was "doing business" in New York. Section 301 jurisdiction may be present even if the cause of action is unrelated to the party's activities in New York. However, a plaintiff must demonstrate that the defendant is doing business "not occasionally or casually, but with a fair measure of permanence and continuity." *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,*

763 F.2d 55, 58 (2d Cir.1985). In a Section 301 analysis, New York courts focus upon several factors, including the existence of a New York Office, the solicitation of business in New York, the presence of bank accounts and other property in the state, and the presence of employees in the state. *Id.*

■ In response to defendant's motion, plaintiff argues that ISI/Cap–Stun Weapon Systems is Zarc's marketing division, rather than a separate entity, and has done business in the state. In addition, "Zarc actively advertises, promotes, distributes, and sells Cap–Stun within the State of New York." (Ballan Aff. at ¶ 7.) Because plaintiff believes that ISI is merely Zarc's marketing division, it is unclear whether his claims of action by "Zarc" refer to endeavors undertaken by ISI or by Zarc itself. Regardless, plaintiff has not established that either Zarc *or* ISI has an office, bank accounts, property, or permanent employees in New York. All he has established is that CAP–STUN has been sold to several police agencies in New York by either Zarc or ISI and that either Zarc or ISI will send advertising materials into New York upon request. Therefore, even assuming ISI is the marketing division of Zarc, the Court finds that plaintiff is unable to offer sufficient evidence of the traditional signs of defendant "doing business" in New York under Section 301.

#### 2. CPLR 302

■ The second possible basis for jurisdiction is New York's long-arm statute, CPLR 302. Even if defendant's contacts with New York are not so continuous and systematic that they establish jurisdiction under Section 301, jurisdiction may be established under Section 302 when a defendant has transacted business in New York and the cause of action arises out of the subject matter of the business transaction. *Paine-Webber, Inc. v. Westgate Group, Inc.,* 748 F.Supp. 115, 118 (S.D.N.Y.1990). In applying Section 302 to make a personal jurisdiction determination, the court properly should consider the totality of the defendant's activities. *Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors,* 510 F.2d 870,

---

1. Such a motion would be made pursuant to Fed.R.Civ.P. 12(b)(2).

873 (2d Cir.1975). Of course, at the summary judgment stage, the burden remains on the plaintiff to present more than mere allegations that sufficient contacts exist.

■ After reviewing the record, the Court is inclined to agree with plaintiff that ISI/CAP–STUN Weapon Systems, if not Zarc, has transacted business in New York and the cause of action here arises out of the subject matter of ISI's business transactions. In order to survive defendant Zarc's motion, however, plaintiff must establish that ISI's activities somehow are attributable to Zarc. The Court notes in plaintiff's favor that a principal can become subject to general jurisdiction in New York through the actions of its agents within the state. N.Y.Civ.Prac.L. & R. 302(a)(1); *Ball,* 902 F.2d at 199. A formal agency relationship between a defendant and an alleged agent need not be established. Plaintiff must only demonstrate that the alleged agent engaged in business activity related to the cause of action for the benefit of and with the knowledge and consent of the non-resident principal, and that the principal exercised "some control" over the alleged agent. *Kreutter v. McFadden Oil Corp.,* 71 N.Y.2d 460, 527 N.Y.S.2d 195, 199, 522 N.E.2d 40, 43–44 (Ct.App.1988).

■ In regard to the "some control" requirement, jurisdiction has been denied "where the corporate entities were truly separate, where the foreign defendant relinquished title and risk of loss outside the state, and where promotion of the defendant's product by the in-state corporation constituted 'mere solicitation.'" *Ball,* 902 F.2d at 199. Short of an express agency agreement, jurisdiction has been found where actions taken by the in-state entity with respect to third parties were binding on the foreign defendant, *see id.,* or where the defendant assumed responsibility for the in-state project "as [an] organizing institution." *Pfaff v. Denver Art Museum,* 1995 WL 373489 at *2 (S.D.N.Y. June 22, 1995). Again, plaintiff argues in this case that ISI/CAP–STUN Weapon Systems is not an independent contractor or other separate entity,

but rather is merely the marketing division of defendant Zarc.

■ The Court does not believe that plaintiff has established with adequate certainty that ISI is in fact the "marketing division" of defendant and thus merely a part of the same company. However, plaintiff has sufficiently verified (1) that ISI engaged in business activity related to the cause of action; (2) for the benefit of and with the knowledge and consent of Zarc; and (3) that Zarc exercised "some control" over ISI. *Cf. Kreutter,* 527 N.Y.S.2d at 199, 522 N.E.2d at 43–44. ISI promotes sales, provides training, and essentially does everything Zarc would do if it sold CAP–STUN in New York in its own right. Plaintiff also has submitted Bills of Lading that reveal that even if ISI sold the CAP–STUN to the New York State Police, the product was shipped directly from Zarc. (Ballan Aff.Ex. E.) Finally, while the letterheads submitted by plaintiff are less than convincing,[2] the business card presented appears to indicate that ISI/CAP–STUN Weapon Systems is in fact the marketing division of defendant Zarc. (*Id.* at Ex. J.)

The Court tends to believe that plaintiff could have done a much better job in establishing the connection between ISI and Zarc, given the fact that discovery is now complete. The evidence submitted has not been significantly controverted by defendant, however, and it does give rise to an inference that Zarc either was directly involved in the selling of CAP–STUN to the state police or exercised "some control" over ISI's selling of the product. As a result, the Court believes that finding jurisdiction here satisfies minimum due process requirements because it does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

### B. PLAINTIFF'S CLAIMS AGAINST ZARC

#### 1. Summary Judgment Standard

■ Pursuant to Fed.R.Civ.P. 56(c), a trial judge may grant summary judgment "if

---

**2.** The letterheads only indicate that the New York State Police department was dealing with the marketing division of ISI/CAP–STUN Weapon Systems, rather than the marketing division of Zarc.

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of informing the Court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The substantive law determines which facts are material to the outcome of a particular case. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. In determining whether summary judgment is appropriate, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

■■■■■ If the moving party satisfies its burden, the burden then shifts to the non-moving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must do more than simply show "that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356. Only when the Court finds it apparent that no rational finder of fact could find in favor of the non-moving party because the evidence to support its case is so slight should summary judgment be granted. *Gallo v. Prudential Residential Servs., Ltd.,* 22 F.3d 1219, 1223 (2d Cir.1994).

## 2. The First Cause of Action

In his First Cause of Action, plaintiff seeks to recover damages pursuant to 42 U.S.C. § 1983 for alleged violations by defendant Zarc of the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.,* and the Fourteenth Amendment. Plaintiff also references violations of the Public Health Service Act ("PHSA"), 42 U.S.C. §§ 201 *et seq.,* but never explains which section of the Act was violated or how it was violated.

■■ Section 1983 is the basis for most suits in federal court against state and local governments, government officers, and private parties acting in conjunction with governments and government officers. Section 1983 creates a cause of action against any person who, acting under color of state law, abridges rights created by the Constitution and laws of the United States. *Polite v. Casella,* 901 F.Supp. 90, 93 (N.D.N.Y 1995). Section 1983 does not create federal court jurisdiction. Rather, it creates a cause of action, a legal entitlement to relief, against those who violate federal law or the Constitution while acting pursuant to state government authority. *Id.*

■■ To the extent plaintiff's First Cause of Action is based on the FDCA, defendant Zarc argues that summary judgment should be granted in its favor because the FDCA creates no private causes of action. Even a cursory review of the applicable caselaw reveals that defendant is correct. *See, e.g., Merrell Dow Pharmaceuticals v. Thompson,* 478 U.S. 804, 811, 106 S.Ct. 3229, 3233–34, 92 L.Ed.2d 650 (1986); *Bailey v. Johnson,* 48 F.3d 965, 968 (6th Cir.1995); *Gile v. Optical Radiation Corp.,* 22 F.3d 540, 544 (3d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 429, 130 L.Ed.2d 342 (1994); *Harris v. McDonald's Corp.,* 901 F.Supp. 1552, 1556 (M.D.Fla. 1995); *Kemp v. Pfizer, Inc.,* 835 F.Supp. 1015, 1022 (E.D.Mich.1993). The Court consequently grants summary judgment for defendant in regard to the alleged FDCA violations, which make up the bulk of the claimed wrongdoing by defendant Zarc.

■■ A private cause of action *is* possible under the PHSA,[3] *see* 42 U.S.C. § 300bb–7, and, obviously, under the Fourteenth Amendment. *See, e.g., Polite,* 901 F.Supp. at 93 (assuming that a private cause of action exists for violations of the Fourteenth Amendment). Plaintiff's argument essentially is that he seeks compensation under Section 1983 for defendant's alleged violation of his statutory and constitutional rights during

---

**3.** Such information may be of little value to plaintiff; as the Court has noted, plaintiff merely mentions, but never explicates, a PHSA claim against defendant Zarc.

the February 20, 1993, incident during which he was sprayed with CAP–STUN. To determine whether summary judgment should be granted on these issues, the Court initially must determine the nature of the allegations required by Section 1983. Because defendant Zarc is a private corporation, the threshold inquiry in this case is whether a genuine issue exists over whether Zarc is even covered by Section 1983, which requires a party to act "under color of state law."

■ Bearing in mind that both state action *and* a state actor are incorporated into the "under color of state law" requirement, a failure by plaintiff to raise a genuine issue as to either would warrant the granting of summary judgment for defendant. In the Second Circuit, "several theories have evolved that when properly alleged suffice to tie a private [party] so closely to governmental actions that a court will hold the private actor's conduct subject to suit for violating another's ... rights." *Dahlberg v. Becker*, 748 F.2d 85, 92 (2d Cir.1984), *cert. denied*, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). Thus a private party may be held a state actor when (1) the complained-of conduct results from a state agent's encouragement or command; (2) the state and private actor jointly participate in depriving plaintiff of his rights; (3) the granting of benefits to a private actor by the state inseparably links them together; or (4) the private actor undertakes to perform activities ordinarily engaged in exclusively by the government. *Id.* Option number (2) seems to be most applicable here.

■ After reviewing the record, the Court concludes that no reasonable jury could find that defendant Zarc was a state actor involved in the alleged deprivation of plaintiff's rights. In sum, plaintiff has offered absolutely no evidence that Zarc conspired with the New York State Police to conduct an illegal experiment whereby officers would subject innocent and unwitting citizens to CAP–STUN in order to study the spray's effects. The *only* conclusion that can be drawn from all of the evidence proffered by plaintiff is that ISI, and possibly Zarc, sold some CAP–STUN to the State Police and trained several officers in its use. Plain-

tiff agrees with defendant that a private corporation does not become a state actor by selling its products to the government. *Steading v. Thompson*, 941 F.2d 498, 499 (7th Cir.1991), *cert. denied*, 502 U.S. 1108, 112 S.Ct. 1206, 117 L.Ed.2d 445 (1992).

■ The Pilot Study undertaken by the State Police appears to have been properly intended "to evaluate the use of chemical agents [that] could be used as a non-lethal, alternative weapon to the issue side arm and the baton," (Def.'s Mem.Supp.Summ.J. at 11), and plaintiff has presented no evidence to the contrary. In other words, the Court has no reason to believe that the Pilot Study was intended to test the *effects* of CAP–STUN on innocents, rather than to test whether CAP–STUN met the State Police's *needs* in situations where the use of some force was justified. Moreover, even if the State Police were involved in some kind of diabolical experiment, no evidence has been put forth that defendant Zarc had anything at all to do with the experiment, or with the officer's decision to use CAP–STUN on plaintiff as opposed to someone else.

As late as his deposition in August, 1995, when discovery was supposed to be complete, plaintiff was unable to clarify the basis for his claim of conspiracy:

Q. Do you have any information that Zarc did anything other than provide the product Cap–Stun to the New York State police department?

A. I personally don't have any knowledge of that.

Q. Do you know of anyone who does have any knowledge of that?

A. No.

Q. Do you plan on calling any witnesses at the trial of this action to testify that Zarc did anything other than provide the New York State police with Cap–Stun?

A. We may.

Q. Who would that be?

A. I'm not sure right now.

(Pl.'s Dep. at 90–91.) Now that discovery is complete and plaintiff has another opportunity to proffer evidence of an illegal plan to test CAP–STUN on innocent citizens, he

does not fare much better. Plaintiff argues in his opposition memorandum that "[i]t is undisputed that Zarc provided the OC product for the State Police test." (Pl.'s Mem. Opp.Summ.J. at 6.) Furthermore, "[t]o the extent that Zarc knowingly provided the State Police with training in the application of Cap–Stun ... it helped to create the experimental protocol." (*Id.*) Lastly, Zarc "was informed of the results of the pilot study ... and uses the results ... as part of its advertising."[4] (*Id.* at 11.)

The Court simply believes that, based on plaintiff's evidence, no reasonable jury could find that defendant Zarc was significantly involved in the Pilot Study. Nor could a reasonable jury find that the Pilot Study was intended to do anything but evaluate a chemical agent that could be used by police as a non-lethal, alternative weapon when the use of some force was justified. For example, annexed to the affidavit of plaintiff's counsel is a document referred to as "a memorandum/test protocol" and presented, the Court presumes, to bolster plaintiff's contention that the Pilot Study was an illegal experiment on innocents. The plain language of the document leads the Court to the opposite conclusion:

> It is the policy of the New York State Police to use only such force as is reasonable and necessary to control a situation or effect an arrest.... The use of [CAP–STUN] is intended to provide members with a means of using force to control a situation [that] will present a minimum potential for harm to those involved.
>
> In order to better understand when [CAP–STUN] should be used, the Division has developed a "Use of Force Continuum.... The member uses [CAP–STUN as a] means of gaining compliance from a subject who is resistant, combative, or poses a threat of injury to himself or others."

(Ballan Aff.Ex. I.)

Whether defendant Zarc was a state actor such that it deprived plaintiff of federal statutory or constitutional rights while acting under color of state law, as required by Section 1983, is a material fact question in this case. After reviewing the record, the Court finds that no genuine issue exists in regard to this material fact because defendant Zarc clearly was never a state actor. Plaintiff has presented no evidence that ISI and/or Zarc did anything more than provide the State Police with a product and possibly receive feedback on its use. Therefore, summary judgment can be granted in favor of defendant on plaintiff's federal claims.

### 3. The Seventh Cause of Action

■ Although defendant Zarc is not mentioned in the Seventh Cause of Action, entitled "NEGLIGENCE," plaintiff now argues that he does in fact have a supplemental state law claim against Zarc for negligence *per se* due to a violation of, *inter alia*, N.Y.Pub.Health Law §§ 2441 and 2443. Because plaintiff is attempting to interpose a claim at this late stage that clearly is not conceived by his Complaint, the Court will not address the merits of the claim. Moreover, to the extent such a supplemental cause of action exists, the Court would decline to exercise jurisdiction over it because summary judgment has been granted on all of plaintiff's federal claims against Zarc.

### 4. The Eleventh Cause of Action

In his Eleventh Cause of Action, plaintiff seeks an injunction preventing Zarc from selling CAP–STUN in New York and preventing the State Police from using CAP–STUN until it is approved by the proper federal authorities. Defendant Zarc argues that the injunction should be denied because plaintiff lacks standing to seek such relief, and the Court is inclined to agree. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983); *Curtis v. City of New Haven,* 726 F.2d 65, 69 (2d Cir.1984). The Court need not reach the issue, however, because plaintiff concedes in his opposition papers that the Eleventh Cause of Action should be dismissed as moot.

---

4. Based on the evidence, it appears that the only "results" of which defendant was informed were that the State Police was pleased enough with CAP–STUN to decide that the department would purchase some kind of OC spray. The only "advertising" proffered by plaintiff consists of claims by Zarc that the New York State Police use their product.

## C. ZARC'S MOTION FOR SANCTIONS

Defendant seeks sanctions against plaintiff's counsel, Robert H. Ballan, Esq., pursuant to 28 U.S.C. § 1927 and, by separate motion, pursuant to Fed.R.Civ.P. 11. Mr. Ballan's first response to these requests immediately starts him off on the wrong foot— he claims that by filing the Rule 11 motion under separate cover, defendant is merely attempting to circumvent Rule 7.1(c) of the Local Rules of the Northern District of New York, which dictates that memoranda of law shall be no more than 25 pages in length. The problem with this argument is that by simply reading Rule 11 plaintiff would realize that the rule *requires* a motion for sanctions to be made "separately from other motions." Fed.R.Civ.P. 11(c)(1)(A).

### 1. Section 1927 Standards

A Court may assess sanctions pursuant to Section 1927 against any attorney "who ... multiplies the proceedings in any case unreasonably and vexatiously...." Although this statutory language implies that it covers conduct taking place during the pendency of an action, Section 1927 also has been applied to the improper filing of a complaint. *See, e.g., Lewis v. Brown & Root, Inc.*, 711 F.2d 1287, 1292 (5th Cir.1983), *modified*, 722 F.2d 209 (5th Cir.), *cert. denied*, 464 U.S. 1069, 104 S.Ct. 975, 79 L.Ed.2d 213 (1984). Generally, Section 1927 "imposes an obligation on attorneys through the entire litigation to avoid dilatory tactics." *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991). Despite the language indicating a "reasonableness" standard, courts have limited awards under Section 1927 to cases where the attorney acted recklessly or in bad faith. *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir.1983).

### 2. Rule 11 Standards

The objective of Rule 11 is to deter dilatory and abusive tactics in litigation, and to streamline the litigation process by lessening frivolous claims or defenses. The rule provides, in pertinent part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney ... is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances: ...
>
> (2) the claims ... therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; [and]
>
> (3) the allegations and other factual contentions have evidentiary support or ... are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery....

Fed.R.Civ.P. 11(b). Imposition of Rule 11 sanctions does not require a finding of bad faith. Rather, "[t]he test as to whether an attorney made a reasonable inquiry prior to signing a pleading is an objective standard of reasonableness under the circumstances at the time the attorney acted." *EEOC v. Tandem Computers, Inc.*, 158 F.R.D. 224, 227 (D.Mass.1994).

Rule 11 requires attorneys to take responsibility for the claims they present by requiring them to make a reasonable inquiry to assure that the claims represented by them are well-grounded in both law and fact. *Id.* At its simplest, Rule 11 "continues to require litigants to 'stop-and-think' before initially making legal or factual contentions." Fed.R.Civ.P. 11, *Advisory Committee Notes* (1993 Amendment). However, under the 1993 revisions to the rule the imposition of sanctions is always discretionary with the Court rather than mandatory. *See* Fed.R.Civ.P. 11(c); *Knipe v. Skinner*, 19 F.3d 72, 78 (2d Cir.1994). As a procedural matter, Rule 11 forbids the imposition of sanctions unless the challenged pleading has not been withdrawn or corrected within 21 days of service of the motion for sanctions. Fed.R.Civ.P. 11(c)(1)(A).

The Court realizes that Rule 11 sanctions must be imposed with caution, so as not to chill the prosecution of meritorious claims. *Knipe*, 19 F.3d at 78; *MacDraw, Inc. v. CIT Group Equip. Fin., Inc.*, 73 F.3d 1253, 1258–59 (2d Cir.1996). Furthermore, a district court must "articulate with specificity the sanctionable conduct and the reasons

supporting the sanctions." *MacDraw*, 73 F.3d at 1258–59. *See also Teamsters*, 948 F.2d at 1346–47; *Sanko S.S. Co. v. Galin*, 835 F.2d 51, 53 (2d Cir.1987); *Oliveri v. Thompson*, 803 F.2d 1265, 1281 (2d Cir.1986), *cert. denied sub nom. Suffolk County v. Graseck*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987).

### 3. Section 1927 and Rule 11 Applied

■ From the Court's perspective, it appears that plaintiff's counsel did fail to make a reasonable inquiry into both the facts and the legal viability of plaintiff's claims against defendant Zarc in December of 1993, when he signed the Complaint. First, plaintiff's counsel has expended considerable time and energy arguing that defendant Zarc is liable to plaintiff for violations of the FDCA. Not surprisingly, defendant also has expended considerable time and energy responding to plaintiff's persistent claims. However, as the Court has already stated, a mere cursory review of the applicable caselaw by plaintiff's counsel would have revealed to him the fact that the FDCA creates no private causes of action. *See, e.g., Merrell Dow*, 478 U.S. at 811, 106 S.Ct. at 3233–34; *Bailey*, 48 F.3d at 968; *Gile*, 22 F.3d at 544; *Harris*, 901 F.Supp. at 1556; *Kemp*, 835 F.Supp. at 1022. Defendant's counsel seems to have notified plaintiff's counsel of this reality on numerous occasions, but with no effect.

Second, in regard to plaintiff's claims against defendant Zarc for other violations of his statutory and constitutional rights, plaintiff's counsel knew at the time he signed the Complaint that plaintiff had no basis in fact for his allegations. Another perusal of plaintiff's deposition, taken *20 months* after plaintiff's counsel signed a document in which he seeks *$20 million*, makes this fact abundantly clear:

Q. Do you have *any* information that Zarc did *anything* other than provide the product Cap–Stun to the New York State police department?

A. I personally don't have any knowledge of that.

Q. Do you know of *anyone* who does have *any* knowledge of that?

A. No.

Q. Do you plan on calling any witnesses at the trial of this action to testify that Zarc did *anything* other than provide the New York State police with Cap–Stun?

A. We may.

Q. Who would that be?

A. *I'm not sure right now.*

Q. Do you know if any people exist?

MR. BALLAN: That's not a question he can answer. We have not received any State discovery yet.

(Pl.'s Dep. at 90–91 (emphasis added).) Thus even 20 months after the Complaint was signed, neither plaintiff nor his counsel knew if any facts existed that would support the serious allegations they had made in the Complaint.

■ It is true that the law does not require a plaintiff to be able to prove his case prior to discovery. However, plaintiff's deposition was taken *after* the discovery deadline—although plaintiff's counsel claims not to have received any discovery yet—and a complaint must always be based "on more than pure speculation and fantasy." *In re Keegan Management Co.*, 154 F.R.D. 237, 241 (N.D.Cal.1994). Regardless of whether discovery was complete at the time of the deposition, it certainly is complete now, and the Court already has held essentially that plaintiff's complaint is *still* based on mere speculation and fantasy. In sum, federal courts "cannot tolerate complaints grounded solely on metaphysical inferences nor those filed without an informed basis for the allegations." *Id.* at 242. Plaintiff and his counsel have taken a colorable claim of excessive force against certain police officers and turned it into a conspiratorial burlesque. Monetary sanctions against plaintiff's counsel are warranted under Rule 11.[5]

---

**5.** Defendant has not convinced the Court that plaintiff's counsel acted with bad faith in pursuing this litigation, so Section 1927 sanctions are not warranted. Defendant is correct that bad faith may be inferred where an attorney's deci-

sions "are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," *Teamsters*, 948 F.2d at 1345, but the Court declines to do so. The Court tends to believe that plaintiff's

The only question that remains is the amount of sanctions the Court should assess. Monetary sanctions must be reasonable as well as consistent with the purpose of Rule 11—to deter baseless filings and dilatory or abusive pretrial tactics. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). In determining the amount, the district court must strike a balance that furthers the purpose of the rule without chilling meritorious litigation. *See id.* To this end, a court may consider not only the conduct itself, but also the offending party's ability to pay. The Court will reserve on this issue pending its receipt of submissions from the parties concerning a proper amount that is consistent with the objectives of Rule 11, the egregiousness of Mr. Ballan's conduct, and the burden this suit has imposed on defendant Zarc.

## IV. CONCLUSION

Defendant Zarc's motion for summary judgment is hereby GRANTED because no genuine issues of material fact exist for trial. Furthermore, because plaintiff conceded that his request for injunctive relief is moot, that request is hereby DISMISSED. Finally, defendant Zarc's motion pursuant to Rule 11 is hereby GRANTED and plaintiff's counsel, Robert H. Ballan, Esq., is liable to defendant Zarc for sanctions. The Court RESERVES in regard to the amount of sanctions pending submissions by the parties on that issue.

**IT IS SO ORDERED.**

counsel was merely deluded by naivete, overzealousness, disorganization, imprudence, or a combination of such factors, rather than true bad faith.