**Kenneth H. WALKER, Peter C. Morse, Jonathan S. Linen, and Marcie Kennedy, Plaintiffs,**

v.

**Linda SMITH, Ronald Smith, James L. Ford, and L. Lee Weber, Individually and d/b/a Facecake Marketing Technologies, Inc., Defendants.**

**No. 02 Civ.4156 RWS.**

United States District Court, S.D. New York.

Aug. 7, 2003.

Fenster & Kurland, New City, NY (Adam K. Kurland, of counsel), for plaintiffs.

Lord, Bissell & Brook, Atlanta, GA (Thomas D. Sherman, Albert M. Myers, III, of counsel), for defendants.

## OPINION

SWEET, District Judge.

Defendants Linda B. Smith ("Smith"), Ronald Smith ("R.Smith"), James L. Ford ("Ford"), and L. Lee Weber ("Weber") (collectively, the "Defendants") have moved for post-judgment sanctions against plaintiffs Kenneth H. Walker ("Walker"), Peter C. Morse ("Morse"), Jonathan S. Linen ("Linen") and Marcie Kennedy ("Kennedy") (collectively, the "Plaintiffs") and their attorneys. Defendants seek relief in the form of their total attorneys' fees and costs to defend this lawsuit. Plaintiffs, in turn, move for sanctions for defending this current motion under Fed. R.Civ.P. 11(c)(1)(A). For the reasons set forth below, both Defendants' and Plaintiffs' motions for sanctions are denied.

## Prior Proceedings

This action was commenced on June 3, 2002. The action was reassigned to this Court as related to *Retail Options, LLC v. FaceCake.com, Inc., et al.,* 02 Civ. 4155(RWS). Previously, Plaintiffs' motion for summary judgment was denied, Defendants' cross-motion to dismiss for lack for jurisdiction as to certain defendants was granted, and their cross-motion for summary judgment was granted. *Walker v. Smith,* 257 F.Supp.2d 691, 692 (S.D.N.Y. 2003).

The instant motion was heard and marked fully submitted on June 25, 2003.

## The Parties

Walker is a resident of New York, New York. Morse is a resident of West Conshohocken, Pennsylvania. Linen is a resident of Summit, New Jersey. Kennedy is a resident of Wynnewood, Pennsylvania.

Smith is a resident of Woodland Hills, California and the chief executive officer ("CEO"), director and shareholder of Facecake. R. Smith is a resident of Atlanta, Georgia and an officer, director and shareholder of FaceCake. Ford is a resident of Hilton Head, South Carolina, chief financial officer, director and shareholder of FaceCake. Weber is a resident of Atlanta, Georgia and a shareholder of Face-Cake.

## The Facts

The facts set forth below are based upon the parties' pleadings, Local Rule 56.1 statements, and the complaint.

Plaintiffs Walker, Morse, Linen and Kennedy received notes in the amount of $50,000, $50,000, $25,000, and $100,000, respectively, executed by FaceCake Marketing Technologies, Inc. ("FaceCake Marketing") and signed by Smith with the title CEO (the "Notes"). Philip Schein ("Schein") and Richard Costello ("Costel-

lo"), alleged by Defendants to be California residents, assigned similar notes in the amount of $25,00 and $50,000 respectively to Walker. The Notes were issued in March and April 2001.

The facts and circumstances giving rise to the financing are in dispute. It was anticipated that Walker and a corporation with which he was affiliated, Retail Options, LLC ("Retail Options"), would assist FaceCake in sales and development.

Notice of default upon the Notes has been served upon the maker of the Notes, but the defaults are disputed by the Defendants. Plaintiffs commenced this action against Defendants to enforce payment on the Notes.

FaceCake has been in legal existence in some form since March 2000. The Defendants are officers, directors or shareholders of FaceCake. From March 2000 to July 2002, FaceCake was registered with the California Secretary of State as FaceCake.com, Inc. Although payment for the Notes was made by checks or money wires payable to FaceCake.com, FaceCake Marketing was the executor of the Notes, and FaceCake was primarily known as FaceCake Marketing throughout 2001. FaceCake has also used the name FaceCake Beautiful Technologies. On July 1, 2002, Defendants filed a Certificate of Amendment to the Articles of Incorporation of FaceCake.com, officially changing its name to FaceCake Marketing. At no time were any funds in payment for the Notes transferred to, or used by, anyone but FaceCake.

Prior to commencement of the action on June 3, 2002, Plaintiffs' counsel contacted the Secretary of the State of California and searched the records of the State of California for FaceCake Marketing. On April 5, 2002, the Secretary of State notified them that "there is no record of a California or foreign corporation, active or inactive" by the name of FaceCake Marketing. Plaintiffs then decided to sue Defendants in their individual capacity for payment on the Notes, asserting that there is no such corporation as FaceCake Marketing.

On April 15, 2003, Defendants' summary judgment motion dismissing the complaint was granted for lack of facts on which personal liability can be based. As stated, "[i]n issuances of commercial paper such as Notes, there is no particular requirement for how the maker is identified, and the maker may be identified by a trade name or assumed name associated with it." *Walker,* 257 F.Supp.2d at 697. Thus, "[t]he use of a trade name, similar to its legal name, will not replace corporate liability with personal liability on behalf of officers and directors." *Id.* at 698.

On June 13, 2003, Plaintiffs filed an action in the Los Angeles Superior Court against FaceCake Marketing and Does 1–25 to obtain payment on the Notes.

## A. SANCTIONS AGAINST PLAINTIFFS

### 1. *Legal Standards*

Defendants seek post-judgment sanctions against Plaintiffs and their counsel pursuant to 28 U.S.C. § 1927 and the inherent equitable power of the court.

■ 28 U.S.C. § 1927 provides:

Any attorney ... admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Sanctions under 1927 can be imposed exclusively against the offending attorneys, not their clients, and "[b]ad faith is the key

element in the imposition of § 1927 sanctions...." *Wood v. Brosse U.S.A., Inc.,* 149 F.R.D. 44, 48 (S.D.N.Y.1993). *See also First Interregional Equity Corp. v. Haughton,* 1994 WL 364038, at *4 (S.D.N.Y. July 13, 1994) ("[I]mposition of sanctions under Section 1927 'is highly unusual and requires a clear showing of bad faith.' ") (*quoting West Virginia v. Chas. Pfizer & Co.,* 440 F.2d 1079, 1092 (2d Cir.1971)). "[T]he Second Circuit has repeatedly held that: an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Wood,* 149 F.R.D. at 49 (*citing Oliveri v. Thompson,* 803 F.2d 1265, 1273 (2d Cir.1986); *United States v. Int'l Bhd. of Teamsters,* 948 F.2d 1338, 1345 (2d Cir.1991)).

Additionally, as the Supreme Court established in *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), courts have the "inherent power to impose attorney's fees as a sanction for bad-faith conduct," and this sanction can be imposed directly on the parties. However, "[a] court must, of course, exercise caution in invoking its inherent power." *Id.* It is in cases when "neither the statute nor the Rules are up to the task, [that] the court may safely rely on its inherent power." *Id.*

Sanctions under the court's inherent power are appropriate when a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers,* 501 U.S. at 45–46, 111 S.Ct. 2123 (*quoting Alyeska Pipeline Serv. Co. v. Wilderness Society,* 421 U.S. 240, 258–59, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). This is the case when a party's "entire conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court," *Id.* at 51, 111 S.Ct. 2123, and

when a party attempts through "tactics of delay, oppression, harassment and massive expense to reduce plaintiff to exhausted compliance," *Id.* at 41, 111 S.Ct. 2123.

In *Nemeroff v. Abelson,* the Second Circuit likewise held that "[a] prevailing defendant is entitled to an award of attorney's fees if a plaintiff brings or maintains an action without adequate factual basis and in bad faith." 704 F.2d 652, 654 (2d Cir.1983). However, this rule "must be applied with caution to make sure that plaintiffs are not deterred from suing to enforce their rights, especially when enforcement of those rights vindicates the Constitution or the acts of Congress." *Id.* Thus, only in "unusual circumstances" will sanctions be imposed, *id.,* and "[p]laintiffs who have a colorable basis for a claim and who act in good faith need not apprehend that defeat on the merits of their lawsuit will require them to pay their adversaries' legal fees," *id.* at 660. A claim is "colorable" "as long as a reasonable attorney could have concluded that facts supporting the claim might be established." *Id.* at 658.

The *Tedeschi* case similarly emphasized that an exception to each side bearing its own litigation fees "is to be applied with caution so that those with legitimate claims are not deterred from their enforcement." *Tedeschi v. Smith, Barney, Harris Upham & Co., Inc.,* 579 F.Supp. 657, 660 (S.D.N.Y. 1984). Thus, for sanctions to apply, "[e]ach of the claims must be patently without substance and color of law," and "asserted wantonly, for the purpose of harassment or delay, or for other improper reasons," and "[n]o reasonable attorney could have concluded that the allegations supporting the claims might be established." *Id.* at 661. A tough standard is necessary since, as recognized by the decision, the imposition of a fee is not just a monetary burden, but "in the case of the

lawyer it carries with it condemnation of his professional conduct." *Id. See also Chambers,* 501 U.S. at 54, 111 S.Ct. 2123 ("[T]he underlying rationale of 'fee-shifting' is, of course, punitive.").

### 2. *Bad Faith Has Not Been Established*

 Here, Defendants did not establish that the Plaintiffs possessed the requisite bad faith for sanctions under either § 1927 or the court's inherent equitable power. FaceCake Marketing executed the Notes, and as validated by the California Secretary of State, FaceCake Marketing was not legally registered at the time the Notes were issued nor at the time the suit was instituted. Plaintiffs gave this fact undue significance, considering FaceCake's continued existence since March 2000, but a belief that FaceCake was operating as a general partnership, rather than as a corporate entity, does not establish bad faith. It is well-established that partners of a general partnership are personally liable for the acts of a partnership. *E.g., United States v. Silverstein,* 237 F.Supp. 446, 448 (S.D.N.Y.1965) ("[A] partner in a general partnership, even though he be inactive, is personally liable for partnership debts.").

When FaceCake.com's name-change to FaceCake Marketing was eventually registered, Plaintiffs believed this to be unavailing. Walker stated in his affidavit: "The fact is, Defendants did not file for their name change until after they were sued individually and after they realized and were put on legal and official notice that the Notes were not executed by any validly existing California corporation, but rather by a nonexistent entity, which can be construed as, according to my attorneys, an unincorporated association or partnership." (Walker Aff. ¶ 22.)

Plaintiffs' state court action in California does not establish bad faith. As Plaintiffs explain, it is a new action against different defendants, and this time FaceCake Marketing is named as a defendant. Schein and Costello appear to be plaintiffs in the California action and to have denied any assignment of Notes to Walker, allegations brought in this action presumably to overcome an attack on diversity jurisdiction.

Although misguided, Plaintiffs' action does not constitute bad faith and "vexatious" and "harass[ing]" litigation, differing greatly from the cases cited by Defendants. *Tedeschi,* 579 F.Supp. at 661. *Chambers v. NASCO, Inc.* was a case where "the extraordinary amount of costs and expenses expended in this proceeding were caused ... by the relentless, repeated fraudulent and brazenly unethical efforts of Chambers" *Chambers,* 501 U.S. at 58, 111 S.Ct. 2123. The litigant filed "a series of meritless motions and pleadings and delaying actions," *id.* at 38, 111 S.Ct. 2123, and ignored "repeated timely warnings ... that his conduct was sanctionable," *id.* at 56, 111 S.Ct. 2123.[1] The court found the litigant's conduct to have "emasculated and frustrated the purposes" of the Local Rules and Federal Rules of Civil Procedure. This is hardly the case here, where Plaintiffs did not file repeated motions and receive repeated warnings, costs are not "extraordinary," and Plaintiffs' errors and miscalculations do not rise to a level of gravity, posing a threat to judicial procedure.

In the *Tedeschi* case, the court characterized the litigant's conduct as "egregious" and the charges as "mendacious," "wholly unfounded and vicious." 579

---

**1.** The District Judge even went so far as to give counsel copies of Judge Schwarzer's article, *Sanctions Under the New Federal Rule 11—A Closer Look. Id.* at 39 n. 3, 111 S.Ct. 2123.

F.Supp. at 661–62. The litigant engaged in a variety of "obstructive tactics": "He repeatedly failed to attend sessions on time, necessitating delays and wasting the time of opposing attorneys; he failed to adhere to stipulations; he made frivolous motions seeking reargument of decided motions; and he sought to avoid determination of the merits of pending motions made by the defendants." *Id.* at 663. Evidence of bad faith was further "heightened" by the fact that "during the entire course of the litigation, despite serious charges leveled ... plaintiff's counsel never noticed the deposition of any of the defendants or any purported witness." *Id.* at 662–63. Thus, the court concluded that the "action, from beginning to end, was simply for the sake of burdening an opponent with unnecessary expenditures of time and effort." *Id.* at 663 (citations omitted). Again, this differs greatly from the present case where Defendants do not claim Plaintiffs engaged in "egregious" conduct and "obstructive tactics" throughout the litigation.

In *Kay v. Fowler,* 587 F.Supp. 720, 723 (D.D.C.1984), the plaintiff failed to present *"any* defense" to defendant's motion for summary judgment, "all but conced[ing] that motion." The court further found that prior to the institution of the action, the plaintiff and attorneys could and did "satisfy themselves" that the documents contained the forged signatures of the defendant and thus defendant had no liability. *Id.* Therefore, "the Court can only conclude that the action was brought against the defendant in bad faith, vexatiously and for oppressive reasons." *Id.* Here, Plaintiffs defended their action in the face of the summary judgment motion against them (and, in fact, continue to do so). Furthermore, Plaintiffs' misguided theory was not based on untruthful statements of fact.

■ Plaintiffs' action thus lacks the indicia of bad faith—extraordinary costs, repeated frivolous filings, obstructive delay tactics, mendacious allegations, and no real prosecution. *Also Compare With In re Freunscht,* 53 B.R. 110, 112 (Bkrtcy.D.Vt. 1985) (finding an action to have been "brought in bad faith, for the vindictive purpose of vexing and harassing" "[i]n view of the movant's complete failure to present any relevant evidence, his inability to make out a colorable claim by articulating any grounds whatever for the motion beyond citing the pertinent provision of the Bankruptcy Code, and his demeanor at the hearing").

*Beaudry Motor Co. v. Abko Props., Inc.,* 780 F.2d 751, 756 (9th Cir.1986), stressed that "[a]n award of attorney fees under the 'bad faith' exception is punitive, and the penalty can be imposed can be imposed only in exceptional cases and for dominating reasons of justice." (quotations omitted). In this case, the court found that the plaintiff should have been aware that claims were barred by the statute of limitations since the complaint was filed approximately thirteen years after the lease/sublease was executed. Again, this is unlike the instant case, where Plaintiffs' action could not be dismissed based on the simple verification of a statute of limitations.

The *Eastway* and *Katzman* cases are further inapplicable since they impose sanctions under Fed.R.Civ.P. 11. *Eastway Constr. Corp. v. The City of New York,* 762 F.2d 243, 253–54 (2d Cir.1985); *Katzman v. Victoria's Secret Catalogue,* 167 F.R.D. 649, 659–61 (S.D.N.Y.1996). *Eastway* specifically considers and rejects the imposition of sanctions under the court's "inherent equitable powers," instead looking to Rule 11, "a somewhat more expansive standard for the imposi-

tion of attorneys' fees." *Eastway,* 762 F.2d at 253.

### B. *SANCTIONS AGAINST DEFEN-DANTS*

Plaintiffs contend that the instant motion brought by Defendants is frivolous, without substance, and an attempt at intimidation, and they, in turn, request attorneys' fees under Fed.R.Civ.P. 11.

 The Second Circuit held in the *Eastway* case that a violation of Rule 11 is triggered in either of two situations: "when it appears that a pleading has been interposed for any improper purpose, *or where,* after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." 762 F.2d at 254 (emphasis in original); *see also O'Malley v. New York City Transit Auth.,* 896 F.2d 704, 705 (2d Cir.1990). The Court in *Eastway* concluded that Rule 11 sanctions are appropriate "where it is patently clear that a claim has absolutely no chance of success under existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands...." 762 F.2d at 254. Thus, "courts must assess whether an attorney's conduct was objectively reasonable at the time he or she signed the pleading, motion, or other paper." *Mopaz Diamonds, Inc. v. The Institute of London Underwriters,* 822 F.Supp. 1053, 1057 (S.D.N.Y.1993). Sanctions must, however, be imposed carefully lest they chill the creativity essential to the evolution of the law. *Katzman,* 167 F.R.D. at 659 (*citing Knipe v. Skinner,* 19 F.3d 72, 78 (2d Cir. 1994); *Murphy v. Cuomo,* 913 F.Supp. 671, 682 (N.D.N.Y.1996)); *see also In re: NASDAQ Market–Makers Antitrust Li-*

*tig.,* 187 F.R.D. 124, 130 (S.D.N.Y.1999) (same).

 Here, Defendants' motion to extend the Court's equitable jurisdiction to impose sanctions in this case cannot be characterized as "patently" unreasonable had having "absolutely no chance of success." Furthermore, this case is unlike *Baker v. Urban Outfitters, Inc.,* 254 F.Supp.2d 346, 361 (S.D.N.Y.2003), where the motion for sanctions was clearly meritless and premised only upon the fact that defendant had not "rolled over and played dead" in response to plaintiff's suit.

### *Conclusion*

For the reasons set forth, both Defendants' and Plaintiffs' motions for attorney fees are denied.

It is so ordered.